OPINION
{¶ 1} Appellant Dustin Phipps was convicted of murder with a firearm specification and abuse of a corpse following a jury trial in the Mahoning County Court of Common Pleas.
 {¶ 2} Appellant shot and killed Adam Dixon on February 28, 2002, following an evening of drinking at a friend's apartment in Youngstown, Ohio. Appellant was sixteen years old at the time. Appellant and Dixon went to the apartment together that evening. Dixon and another individual subsequently became involved in a wrestling match during which Appellant was somehow struck in the leg. Appellant was angered as a result.
 {¶ 3} Thereafter, Appellant picked up Dixon and threw him across the room. Dixon was on the ground for a while. He later asked Appellant if he wanted a ride home, and Appellant replied, "[t]he only way you're gonna leave here is in a body bag." (Tr., p. 194.) Dixon attempted to leave, and Appellant shot him in the head three times.
 {¶ 4} Appellant and another individual at the residence covered Dixon's body in garbage bags and carried it to the car. The others called the police after Appellant left. (Tr., pp. 240, 242.) Appellant subsequently slapped and hit Dixon's body several times before dumping it in the Mahoning River. (Tr., p. 314.)
 {¶ 5} Appellant was indicted on one count of murder in violation of R.C. § 2903.02 with a firearm specification and one count of abuse of a corpse in violation of R.C. § 2927.01(B). The Juvenile Division had relinquished jurisdiction and transferred Appellant's case to the General Division.
 {¶ 6} Following Appellant's conviction on the charges, he was sentenced to fifteen years to life for murder, a consecutive three years on the firearm specification, and eleven months for abuse of a corpse. Appellant timely appealed to this Court.
 {¶ 7} Appellant's original appellate counsel sought to withdraw and filed a no-merit brief in this case. Appellant subsequently acquired new counsel and asserts three assignments of error on appeal. He argues that the trial court erred in failing to provide a lesser included offense instruction, that he was denied the effective assistance of counsel, and that he should have received the minimum sentence for his abuse of a corpse conviction. For the following reasons, Appellant's assignments of error are overruled. However, pursuant to the Ohio Supreme Court's decision in State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, 845 N.E.2d 470, Appellant's sentence is vacated and remanded for resentencing.
 {¶ 8} Appellant's first assignment of error asserts:
 {¶ 9} "The trial court erred in failing to give the requested lesser included charge of voluntary manslaughter. (Tr., Vol. II, pp. 370-371.)"
 {¶ 10} When reviewing a trial court's jury instructions, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested instruction was an abuse of discretion under the facts and circumstances of the case. State v. Wolons (1989), 44 Ohio St.3d 64, 68,541 N.E.2d 443. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 11} It should initially be explained that counsel's main trial strategy was to establish that Appellant committed voluntary manslaughter and not murder. This was evidently counsel's chief trial tactic based on the overwhelming evidence against Appellant, including his videotaped confession. However, counsel's strategy failed since the trial court refused to provide the voluntary manslaughter instruction.
 {¶ 12} Appellant contends that the trial court abused its discretion when it denied his request to instruct the jury on the offense of voluntary manslaughter as a lesser-included offense of murder. The Ohio Supreme Court has held that voluntary manslaughter is not a lesser included offense of murder. Statev. Shane (1992), 63 Ohio St.3d 630, 632, 590 N.E.2d 272 citingState v. Tyler (1990), 50 Ohio St.3d 24, 37, 553 N.E.2d 576. Instead, "[v]oluntary manslaughter is an inferior degree of murder[.]" Id. In any event, a requested instruction for an inferior degree offense requires the same analysis on review. A reviewing court must determine whether, "the evidence presented at trial would reasonably support both an acquittal on the charged crime of murder and a conviction for voluntary manslaughter." Id. This test requires a court to determine whether sufficient evidence was presented at trial relative to the inferior-degree offense. Some evidence tending to support the offense is not enough. Id.
 {¶ 13} We must, then, determine whether there was sufficient evidence presented at Appellant's trial to reasonably support the requested voluntary manslaughter charge and an acquittal on the murder charge. For the following reasons, the evidence was insufficient to support a voluntary manslaughter instruction.
 {¶ 14} Appellant was convicted of one count of murder in violation of R.C. § 2903.02, which provides, "[n]o person shall purposely cause the death of another * * *."
 {¶ 15} The offense of voluntary manslaughter as stated in R.C. § 2903.03 provides,
 {¶ 16} "(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another * * *."
 {¶ 17} To determine whether the alleged provocation was sufficient to provoke the use of deadly force, "the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time."State v. Deem (1988), 40 Ohio St.3d 205, 211, 533 N.E.2d 294, quoting State v. Mabry (1982), 5 Ohio App.3d 13, 449 N.E.2d 16, paragraph five of the syllabus. The trial court is required to consider the facts of the case and evaluate the evidence in the light most favorable to the defendant. State v. Wilkins (1980),64 Ohio St.2d 382, 388, 415 N.E.2d 303. However, the Ohio Supreme Court has also held that, "[f]or provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control." Statev. Shane (1992), 63 Ohio St.3d 630, 635, 590 N.E.2d 272.
 {¶ 18} The alleged provocation in this case was that the victim, Adam Dixon, struck Appellant in the leg while he was wrestling with Mike Stanton. Appellant did not testify at trial. While there were some discrepancies, the record reflects there was substantial agreement as to the alleged provocation.
 {¶ 19} Appellant and Adam Dixon were visiting a friend, Mike Stanton, at the apartment he shared with Eugene Lamar and Amanda Allen. Lamar and Allen were dating at the time. The five were drinking beer, watching movies, and playing pool. The four males were also "trash talking" to one another all evening. At one point, Stanton brought out Lamar's .22 rifle, and Stanton and the others were shooting the rifle from the balcony for fun. (Tr., pp. 205, 215-216, 227, 329.)
 {¶ 20} Later that night, Stanton and Dixon began wrestling in the living room. Appellant was watching them when he was inadvertently struck in the leg by Dixon. There was no evidence that this was an intentional act. Appellant became angry as a result. In response, Appellant attacked Dixon, punched him in the head, and threw him across the room. Dixon remained on the floor where he landed for the next ten to fifteen minutes. Once Dixon got up, he asked Appellant if he wanted a ride home. Appellant responded, "[t]he only way you're gonna leave here is in a body bag." (Tr., p. 194.) Dixon made a flippant remark and turned to leave the apartment. Appellant pulled Lamar's rifle from behind the couch and shot Dixon in the face. Dixon fell to the floor. Appellant then stood over Dixon and shot him two more times in the head. Appellant was swearing and telling Dixon to die. (Tr., pp. 192-197, 231-237, 305, 309, 337-338.)
 {¶ 21} Since Appellant did not testify at trial, he did not provide his version of the evening or an explanation of his alleged provocation. Thus, the trial court could not fully consider Appellant's emotional and mental state.
 {¶ 22} Further, there was absolutely no evidence that Dixon intentionally struck Appellant or that Appellant was physically injured as a result. In fact, Stanton was not even aware that Appellant was hit. (Tr., p. 336.)
 {¶ 23} It has been held that name calling coupled with a single slap to the face is insufficient to incite deadly force.State v. Ballinger, 8th Dist. No. 79974, 2003-Ohio-145, ¶ 27-29. This is true even though in Ballinger the slap also inadvertently made contact with the defendant's infant daughter. Id.
 {¶ 24} Despite this, Appellant directs our attention to several references in the trial transcript that refer to the fact that Appellant was upset and angry with the victim when he shot him in the head. For instance, Lamar testified that Appellant was "pissed off" and screaming at the victim and telling him to die before he shot him. Appellant was also swearing at the victim. (Tr., pp. 237, 269.)
 {¶ 25} Contrary to counsel's arguments, the victim's accidental contact with Appellant and mutual bad-mouthing do not constitute serious provocation. Likewise, this is insufficient to incite deadly force in a reasonable person. Shane, supra, at 635, 590 N.E.2d 272. Thus, it is impossible to conceive how the foregoing facts could reasonably have provoked Appellant's sudden passion or rage.
 {¶ 26} Based on this record, no reasonable jury could have found Appellant not guilty of murder, but guilty of voluntary manslaughter. The record lacks evidence of sufficient serious provocation to incite the use of deadly force. R.C. § 2903.03. As such, this assignment of error lacks merit and the trial court did not abuse its discretion in failing to give the voluntary manslaughter jury instruction.
 {¶ 27} Appellant's second assignment of error states:
 {¶ 28} "Appellant's [sic] was denied the effective assistance of counsel when counsel failed to call Appellant as a witness at the suppression hearing, and failed to make a final argument to the jury."
 {¶ 29} In order to demonstrate the denial of the effective assistance of counsel, a defendant must first establish that his attorney's performance fell below an objective standard of reasonable representation. Next, a defendant must show that counsel's deficient performance was prejudicial; that it affected the result of the defendant's trial. Strickland v. Washington
(1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v.Bradley (1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373. Further, a "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." Strickland, supra, at 689.
 {¶ 30} Appellant raises two arguments in support of this assigned error. First, he claims that his trial counsel erred in failing to call him as a witness at his suppression hearing. Appellant argues that the submission of his tape recorded confession was devastating to his case, and that absent his confession, the outcome of the trial would have been different. However, Appellant fails to acknowledge that three individuals witnessed the shooting and testified that Appellant shot Dixon in the head three times. Thus, assuming that counsel was ineffective in failing to call Appellant at his suppression hearing, the error would not have affected his conviction.
 {¶ 31} Second, Appellant argues that his trial counsel committed reversible error in failing to make a final closing argument at his jury trial. As indicated earlier, Appellant's trial counsel's main trial tactic was to elicit evidence to support the theory that Appellant should only have been charged with voluntary manslaughter. Once the trial court refused to instruct the jury on the offense of voluntary manslaughter, Appellant's closing argument was evidently futile.
 {¶ 32} Further, courts usually defer to counsel's decisions regarding closing argument as within an attorney's trial strategy. State v. Smith (2000), 89 Ohio St.3d 323, 328,731 N.E.2d 645; State v. Banks, 10th Dist. No. 03AP-1286,2005-Ohio-1943. The failure to make an opening and closing statement will not result in a finding of ineffectiveness perse. State v. Warner (Nov. 8, 1999), 5th Dist. No. 98 CA 22A, at 3; State v. Keith (1997), 79 Ohio St.3d 514, 537,684 N.E.2d 47. Even assuming counsel did err in failing to make a closing argument, the record reflects that this error did not clearly affect the outcome of Appellant's trial.
 {¶ 33} Based on the foregoing, Appellant's second assignment of error lacks merit in its entirety and is overruled.
 {¶ 34} Appellant's third and final assignment of error asserts:
 {¶ 35} "The trial court erred in imposing a sentence greater than the minimum sentence for the offense of abuse of a corpse."
 {¶ 36} Appellant challenges the trial court's decision to impose more than the minimum sentence for his abuse of a corpse offense in violation of R.C. § 2927.01(B), which is a fifth degree felony, since he has never before served a prison term. Appellant concedes that his sentence for this offense was within the prescribed range of penalties and was not the maximum allowable sentence.
 {¶ 37} However, Appellant argues that the trial court failed to acknowledge that it engaged in the requisite analysis before making the statutory findings under R.C. § 2929.14(B) contrary toState v. Edmonson (1999), 86 Ohio St.3d 324, 326,715 N.E.2d 131. Although the findings were made, Appellant challenges the court's lack of analysis on the record.
 {¶ 38} Pursuant to the Ohio Supreme Court's recent decisionState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856,845 N.E.2d 470, ¶ 61, the trial court's requisite findings under R.C. §2929.14(B) are no longer mandated because the Foster Court held they are unconstitutional in violation of Blakely v. Washington
(2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403. See also,In re Criminal Sentencing Statutes Cases, ___ Ohio St.3d ___,2006-Ohio-2109. However, the Supreme Court concluded that the unconstitutional judicial factfinding under R.C. § 2929.14(B) is capable of being severed from the statute. Foster at ¶ 97.
 {¶ 39} Since Appellant raises R.C. § 2929.14(B) on appeal, we have no choice but to vacate Appellant's sentence and remand this matter for a new sentencing hearing pursuant to Foster, supra, on the abuse of a corpse conviction. While we looked to guidance in the matter from the Supreme Court in In re CriminalSentencing Statutes Cases, supra, this group of cases offered conflicting precedent as to the manner in which cases would be, on their face, valid post-Foster should be handled. We believe that this amalgamated group of cases must lead us to the conclusion that, because of the possibility of taint using the now unconstitutional rules, we must reverse when an appellant raises Foster issues as to a portion of his sentence. It should be said, however, that we reverse only as to that portion actually appealed by Appellant; his sentencing on the abuse of a corpse conviction.
 {¶ 40} In conclusion, Appellant's first and second assignments of error are overruled and his third assignment of error is sustained. Appellant's convictions are affirmed. However, his sentence on his abuse of a corpse conviction is unconstitutional and is hereby vacated and remanded for resentencing.
Donofrio, P.J., concurs.
DeGenaro, J., concurs in judgment only.