OPINION
{¶ 1} Defendant-appellant, James P. Lunsford ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas, convicting him of one count of murder with a firearm specification entered upon a jury verdict.
 {¶ 2} The charges in this case arise out of the shooting death of Michael Pettiford ("Pettiford"). Pettiford lived with his girlfriend Kelly Garrett ("Garrett") at 53 South Eureka Avenue, in Franklin County, Ohio. Appellant lived directly across the street from them at 52 South Eureka Avenue. On March 19, 2004, Pettiford and Garrett left their residence to go to lunch at around 11:45 a.m. As they were leaving, Garrett saw appellant standing on his porch. According to Garrett, appellant was standing on the porch with his arms crossed and staring at Garrett and Pettiford. Appellant looked at Garrett, and said, "What's up, Sauce?" (Tr. at 55.)[1] Garret replied, "What's up?" Id. Pettiford said, "Hey, Jimmy," but appellant did not speak to Pettiford. Id. Pettiford then said, "What's up, Buddy? What's up, Jimmy? What's up, Jimbo?" but appellant still did not speak to Pettiford. Id. Garrett and Pettiford then left for lunch.
 {¶ 3} Upon their return from lunch, Garrett got ready to leave for work. At approximately 2:40 or 2:45 p.m., Pettiford walked out with Garrett as she went to her car to leave for work. Garrett described that as she was leaving, appellant said, "Hi" to her and began talking to Pettiford. Appellant asked Pettiford about keys to a van that Pettiford and appellant used while working together to rehab houses. Garrett testified that Pettiford and appellant were kidding around with each other, and as she drove away, Pettiford and appellant were standing there laughing and having a casual conversation. When Garrett left, appellant was standing on his front porch, and Pettiford was standing on the sidewalk in front of appellant's house.
 {¶ 4} Responding to a 911 call, Battalion Chief, Thomas Hackett, of the Columbus Fire Department was the first to arrive at the scene. Battalion Chief Hackett described that when he arrived he saw appellant sitting on the front stoop of his house and that appellant appeared to be in a very emotional state. Battalion Chief Hackett asked appellant if there were any problems in the area, but he was not able to understand appellant's first two responses. The third time, appellant said that his friend from across the street had come over to appellant's home, assaulted him, and that appellant shot him. Columbus Police Officer Jerry Orick was one of the first police officers at the scene, arriving at 2:48 p.m. According to Officer Orick, appellant stated, "I shot him. I didn't want to but I did. I had to." (Tr. at 283.)
 {¶ 5} Earl Devinney ("Devinney") lived next door to Pettiford and was watching television in the afternoon of March 19, 2004, when he heard five to six gunshots. Devinney testified that he looked out the window and saw appellant walking across the street away from Pettiford's house with a pistol in his hand. According to Devinney, "[appellant] got up on the front porch, walked back and forth, and sat down in the doorway with a gun between his legs. He put the gun away." Id. at 231.
 {¶ 6} According to Franklin County Deputy Coroner, Dr. Patrick Fardal, Pettiford suffered five entrance gunshot wounds, one of which was fatal. All of the shots were fired to Pettiford's back and chest area. Dr. Fardal stated:
Basically, [Pettiford], at the time he came to our office, revealed that he had five entrance gunshot wounds, and two were in the left back. One was in the right back. One was in the left arm, and there was an exit wound in the medial left arm, and there was an entrance wound on the left lateral chest, which probably could be a re-entry from a bullet that went through his arm. Other than the exit wound on the inside of his left arm, all the projectiles are still within his body, and I subsequently recovered them.
Id. at 188.
 {¶ 7} Additionally, five shell casings were recovered in the street between appellant's and Pettiford's backyard where Pettiford's body was recovered. There were no shell casings found on appellant's porch or sidewalk.
 {¶ 8} Appellant was indicted by a Franklin County Grand Jury on March 29, 2004, on one count of aggravated murder with a firearm specification. The matter proceeded to jury trial on October 18, 2005. At trial, appellant's counsel requested that the jury be instructed on the offense of voluntary manslaughter, but the trial court refused such request. The jury returned a verdict of not guilty of the offense of aggravated murder, and guilty of the lesser included offense of murder with the firearm specification. The trial court sentenced appellant to 15 years to life on the murder charge and an additional three years on the firearm specification. Appellant timely appealed.
 {¶ 9} On appeal, appellant brings the following single assignment of error for our review:
THE TRIAL COURT ERRED BY REFUSING TO CHARGE THE JURY ON THE LESSER INCLUDED OFFENSE OF VOLUNTARY MANSLAUGHTER.
 {¶ 10} When reviewing a trial court's jury instruction, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested instruction was an abuse of discretion under the facts and circumstances of the case. State v. Wolons (1989), 44 Ohio St.3d 64, 68; State v.Dovangpraseth, Franklin App. No. 05AP-88, 2006-Ohio-1533; Statev. Phipps, Mahoning App. No. 04 MA 52, 2006-Ohio-3578. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 11} R.C. 2903.03(A) defines voluntary manslaughter, and provides, "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another[.]" The Ohio Supreme Court has held that voluntary manslaughter is not a lesser included offense of murder, but rather is an inferior degree of aggravated murder. State v. Shane (1992),63 Ohio St.3d 630, 632, citing State v. Tyler (1990), 50 Ohio St.3d 24,37; see, also, State v. Conway, 108 Ohio St.3d 214, 238,2006-Ohio-791, citing Tyler.
 {¶ 12} Even though voluntary manslaughter is not a lesser-included offense of murder, the test for whether a trial court should give a jury an instruction on voluntary manslaughter, when a defendant is charged with aggravated murder is the same test to be applied as when an instruction on a lesser-included offense is sought. Shane, at 632. Thus, a defendant charged with aggravated murder is entitled to an instruction on voluntary manslaughter when the evidence presented at trial would reasonably support both an acquittal on the charged crime of aggravated murder and a conviction of voluntary manslaughter. Conway, supra, at 238, citing Shane, at 632. "Before giving a voluntary-manslaughter instruction in a murder case, the trial court must determine `whether evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant such an instruction.'" Id. at 238-239, quoting Shane, paragraph one of the syllabus. "For provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control." Shane, at 635.
 {¶ 13} Appellant contends that the trial court refused to instruct the jury on voluntary manslaughter because appellant did not testify at trial. Because a defendant's testimony is not a required element in the determination regarding a jury instruction on voluntary manslaughter, appellant argues that the trial court erred in its refusal to give the requested instruction. It is appellant's position that the evidence supports an instruction on voluntary manslaughter because appellant called 911, he was cooperative with the police, he was emotionally upset after the incident, he told persons at the scene that the victim came to his house and assaulted him, and he stated to Officer Orick, "I shot him. I didn't want to but I did. I had to." (Tr. at 283.) Thus, according to appellant, a reasonable jury could find that appellant was under the influence of sudden passion brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite appellant into using deadly force in order for him to be convicted of voluntary manslaughter rather than aggravated murder. We do not find appellant's position well-taken.
 {¶ 14} Regardless of the evidence to which appellant directs this court, the record is devoid of any evidence pertaining to the actions of either appellant or Pettiford prior to, and at the time of, the shooting. Even if Pettiford did assault appellant, there is no evidence as to the nature of such assault, and whether such assault was of the type to incite appellant into using deadly force. Garrett testified that both appellant and Pettiford were laughing and having a casual conversation when she left the area sometime between 2:40 and 2:45 pm. There is no evidence in the record to suggest that appellant was acting under the influence of sudden passion or in a fit of rage when he shot Pettiford. There were no witnesses to the shooting, and appellant did not testify at trial. We agree with appellant that a defendant is not required to testify, but as the trial court noted, given the lack of witnesses, appellant's failure to testify meant that there was no account of what happened just prior to the shooting. While appellant's statements to Hackett and Orick at the scene suggest that something occurred between appellant and Pettiford, they do not provide evidence to support appellant's contention that he was acting under provocation occasioned by Pettiford that was sufficient to incite appellantto use deadly force. Further, the evidence established that Pettiford was shot in the back and in his chest area, suggesting that he was walking or running away from appellant at the time he was shot. Also, Devinney described that after the shots were fired, he saw appellant on Pettiford's side of the street, which indicates that if the incident began at appellant's home, Pettiford was going to his own residence when he was shot. There is also no evidence in the record that appellant received any injuries from the alleged assault by Pettiford.
 {¶ 15} Even assuming appellant subjectively could be easily provoked to act under the influence of sudden passion or in a fit of rage, there must be serious provocation occasioned by the victim. State v. Braden, 98 Ohio St.3d 354, 2003-Ohio-1325. In the case sub judice, there is no evidence that Pettiford did something towards appellant that was reasonably sufficient to incite or arouse appellant into using deadly force. Therefore, we find that the trial court did not err in refusing to give the requested jury instruction on voluntary manslaughter.
 {¶ 16} For the foregoing reasons, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
Klatt, P.J., and Brown, J., concur.
[1] "Sauce" is a nickname used by Garrett.