[Cite as *State v. Delawder*, 2012-Ohio-1923.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 10CA3344 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| LARRY DELAWDER | : | |
| | : | **RELEASED 04/25/12** |
| | | |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Timothy Young, Ohio State Public Defender, and Kristopher A. Haines, Ohio State Assistant Public Defender, Columbus, Ohio, for appellant.

Mark E. Kuhn, Scioto County Prosecutor, Portsmouth, Ohio, for appellee.

_____

Harsha, J.

{¶1}    A jury found Larry Delawder guilty of various offenses stemming from an incident in which he purportedly attempted to steal property from a parked vehicle and ran when caught in the act.  After the owner and two comrades chased him home, Delawder allegedly stabbed and killed the owner and attempted to injure his comrades with a metal bar.  Delawder claims he opened the vehicle by mistake and acted in self-defense and in defense of his family at various times during this incident.  He now appeals several of his convictions and sentences.

{¶2}    Delawder contends that his convictions for aggravated felony murder, aggravated robbery, and robbery were against the manifest weight of the evidence because the State failed to establish that he committed or attempted to commit a theft offense.  Specifically, he argues that the jury lost its way in discrediting evidence that he

mistakenly entered the truck.  The State acknowledges it did not prove a theft actually occurred.  However, the State presented evidence that witnesses saw Delawder bent over in the truck in a position from which he could rummage through its contents and that he ran when caught in the act, i.e. evidence from which a jury could infer an attempted theft occurred.  We leave credibility determinations to the finder of fact.  And because the jury could reasonably return a guilty verdict based on the State's version of events, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse the convictions.

{¶3}    Next, Delawder argues that the trial court committed plain error when it failed to sua sponte instruct the jury on involuntary manslaughter as a lesser included offense of the aggravated felony murder and felony murder charges.  He also argues that trial counsel rendered ineffective assistance by not requesting such an instruction.  However, Delawder failed to rebut the presumption that trial counsel made a strategic decision to not request the instruction in hopes of obtaining a complete acquittal.  Likewise, a defendant may not rely on the plain error rule to evade the consequences of his own trial strategy.  Thus, we reject Delawder's arguments.

{¶4}    Delawder also complains that the court gave the jury erroneous instructions on aggravated felony murder.  In addition, he contends that trial counsel rendered ineffective assistance by not objecting to these instructions.  We agree some of the complained of instructions might have confused the jury if read in isolation.  However, when read in context with the rest of the charge, the court provided the jury with adequate instructions.  And counsel had no duty to object to an appropriate instruction.

{¶5}    In addition, Delawder argues that the trial court committed plain error because it failed to merge his conviction for felony murder with his conviction for felonious assault.  He also contends that the court committed plain error because it failed to merge his conviction for aggravated felony murder (predicated on aggravated robbery) with his conviction for aggravated robbery.  We agree with Delawder's contention that these pairs of offenses constitute offenses of similar import.  Therefore, we remand so the trial court can determine whether the offenses were committed separately or with a separate animus and resentence Delawder accordingly.

{¶6}    Finally, Delawder contends that trial counsel rendered ineffective assistance regarding the charges for the felonious assault of the vehicle owner's two comrades by not objecting when the court referred to "deadly force" in its instruction on the defense of another.  Delawder claims the court should have instructed on the use of "non-deadly force."  However, the evidence does not support an instruction on non-deadly force.  Therefore, trial counsel did not perform deficiently by failing to request such an instruction.

## I.  Facts

{¶7}    A grand jury indicted Delawder on two counts of aggravated felony murder, felony murder, aggravated robbery, robbery, and felonious assault, naming Jotham Lee Parker as the victim for each count.  The grand jury also indicted Delawder on two counts of felonious assault, naming Kyle McCleese and Chad McGlone as victims, and on other charges not relevant to this appeal.

{¶8}    An abbreviated review of the evidence reveals that Delawder and two cousins went to a bar called the Fish Bowl around 10:00 pm.  Also at the bar that

evening were regular patrons Parker (the decedent), McCleese, McGlone and Justin Preston. Initially, a disturbance broke out involving another patron named Richard Spencer and some of the other customers, possibly including Parker and/or his friends. Eventually, Spencer had to be removed from the bar. Later, a bartender who had served Delawder earlier that evening went outside to smoke and saw an individual she identified as Delawder breaking into Parker's vehicle. The bartender alerted Parker and his friends, who confronted the individuals they felt were breaking into the truck. Upon being confronted, Delawder and his companion fled the scene with Parker and his comrades in hot pursuit. Delawder ran to the residence where he was staying with relatives. A struggle ensued and Delawder mortally stabbed Parker with a knife while the two men were engaged in a scuffle. Then Delawder ran into the house and his relatives threatened to call the "cops" on Parker and his friends. Shortly after, Delawder reappeared with a black object, later described as metal tire tool or "pipe," and began swinging it at his pursuers. Delawder did not hit anyone with the object but his attempts caused the others to back off, and Delawder eventually disappeared into the house. When the police arrived, they found Delawder hiding in a bathroom where he had changed clothes and was attempting to shave his head.

{¶9}   Delawder's version of the events was that he entered Parker's truck by mistake, believing it to be his cousin's truck, which he had ridden to the bar in. He initially told police he ran because he felt the group chasing him was angry at him for flirting with their women in the bar. However, at trial he claimed he ran because the men chasing him had been involved in the earlier incident in the bar with Spencer. He also claimed he acted in self- defense when he stabbed Parker, who was violently assaulting

him in the yard of his relatives.  He indicated the relatives felt threatened by Parker and

friends, so he went after them with the tire tool to protect his relatives.  He testified he

"didn't know why" he had started to shave his head.

**{¶10}** More specific testimony appears where relevant in our analysis.

### C.  Verdict

**{¶11}** The jury found Delawder guilty on all nine counts of the indictment.  When

the court sentenced him it merged the convictions for Count 2 (aggravated felony

murder) and Count 3 (felony murder) of the indictment with Count 1 (aggravated felony

murder).  The court also merged the conviction for Count 5 (robbery) with Count 4

(aggravated robbery).  This appeal followed.

### II.  Assignments of Error

**{¶12}** Delawder assigns the following errors for our review:

I.   The trial court committed plain error when it failed to provide a jury
     instruction regarding the lesser included offense of involuntary
     manslaughter under R.C. 2903.04(A) to the charged offenses of
     aggravated murder and murder, and when the trial court failed to
     properly instruct the jury regarding its consideration of the mens rea
     and causation elements of the aggravated murder charges, in
     violation of Mr. Delawder's Fifth, Sixth, and Fourteenth Amendment
     rights under the United States Constitution, and Section 10 and 16,
     Article I of the Ohio Constitution.  (Dec. 22, 2009, Indictment; Jan.
     26, 2010, Bill of Particulars; Feb. 15, 2010, Request for Instructions
     to the Jury; State's Exhibit 23; Tr. 275-302, 319-21, 353-65, 368-70,
     406-12, 557-83, 614-18, 1151-1242, 1249-50, 1308-36).

II.  The trial court violated Mr. Delawder's rights to due process and a
     fair trial when it entered judgments of conviction for robbery,
     aggravated robbery, and both counts of aggravated murder, when
     those judgments were against the manifest weight of the evidence,
     in violation of Mr. Delawder's rights under the Fifth, Sixth, and
     Fourteenth Amendments to the United States Constitution, and
     Sections 10 and 16, Article I of the Ohio Constitution.  (Dec. 22,
     2009, Indictment; Jan. 26, 2010, Bill of Particulars; Mar. 12, 2009,
     Sentencing Entry; State's Exhibit 56; Tr. 207-74, 276-83, 308-09,

312-18, 561, 565-66, 594-99, 761-68, 941-77, 987-1009, 1151-1242, 1266-69).

III.    The trial court committed reversible error when it failed to merge the offense of felonious assault upon Mr. Parker under R.C. 2903.11(A)(2), with the offense of murder under R.C. 2903.02(B), which was predicated upon the felonious assault upon Mr. Parker under R.C. 2903.11(A)(2), and sentenced Mr. Delawder to multiple sentences for allied offenses of similar import committed with a single animus, in violation of R.C. 2941.25, and in violation of Mr. Delawder's Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution.  (Dec. 22, 2009, Indictment; Jan. 26, 2010, Bill of Particulars; Mar. 12, 2010, Sentencing Entry; Tr. 275-302, 319-21, 353-65, 557-83, 1182-96, 1350-52).

IV.    Mr. Delawder's trial counsel rendered ineffective assistance of counsel in violation of Mr. Delawder's rights under the Fifth, Sixth, and Fourteenth Amendment rights to the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution.  (Assignment of Error I; Feb. 15, 2010, Request for Instructions to the Jury; Dec. 22, 2009, Indictment; Jan. 26, 2010, Bill of Particulars; Mar. 12, 2010, Sentencing Entry; State's Exhibit 1; State's Exhibit 2; Tr. 295-301, 361-65, 388-99, 575-78, 612-14, 1010-1208, 1249-54, 1326-27).

V.    The trial court committed reversible error when it failed to merge the offense of aggravated robbery with the offense of aggravated murder, and sentenced Mr. Delawder to multiple sentences for allied offenses of similar import committed with a single animus, in violation of R.C. 2941.25, and in violation of Mr. Delawder's Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution.  (Dec. 22, 2009, Indictment; Mar. 12, 2010, Sentencing Entry; Tr. 207-302, 319-21, 353-65, 557-83, 1182-96).[1]

### III.  Manifest Weight of the Evidence

{¶13}  In his second assignment of error, Delawder contends that his convictions for robbery, aggravated robbery, and both counts of aggravated felony murder were against the manifest weight of the evidence.  "In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must

---

[1] This assignment of error was added by leave of the court after Delawder filed his initial brief.

review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Brown*, Athens App. No. 09CA3, 2009-Ohio-5390, at ¶24, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. A reviewing court "may not reverse a conviction when there is substantial evidence upon which the trial court could reasonably conclude that all elements of the offense have been proven beyond a reasonable doubt." *State v. Johnson* (1991), 58 Ohio St.3d 40, 42, 567 N.E .2d 266, citing *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N .E.2d 304, at paragraph two of the syllabus.

{¶14} Even when acting as a thirteenth juror we must still remember that the weight to be given evidence and the credibility to be afforded testimony are issues to be determined by the trier of fact. *State v. Frazier*, 73 Ohio St.3d 323, 339, 1995-Ohio-235, 652 N.E.2d 1000, citing *State v. Grant*, 67 Ohio St.3d 465, 477, 1993-Ohio-171, 620 N.E.2d 50. The fact finder "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. City of Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (per curiam). Thus, we will only interfere if the fact finder clearly lost its way and created a manifest miscarriage of justice. Moreover, "[t]o reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." *Thompkins*, supra, at paragraph four of the syllabus, construing and applying Section 3(B)(3), Article IV of the Ohio Constitution.

**{¶15}** The jury found Delawder guilty of: 1.) robbery in violation of R.C. 2911.02(A)(2); 2.) aggravated robbery in violation of R.C. 2911.01(A)(1) and (A)(3); 3.) aggravated murder in violation of R.C. 2903.01(B) predicated on the aggravated robbery charge; and 4.) aggravated murder in violation of R.C. 2903.01(B) predicated on the robbery charge. Before the jury could find Delawder guilty of any of these crimes, it had to find that he committed or attempted to commit a theft offense. See R.C. 2911.02(A)(2); R.C. 2911.01(A)(1) and (A)(3); R.C. 2903.01(B). Delawder contends that the jury lost its way when it found that the State proved beyond a reasonable doubt that he committed or attempted to commit a theft offense.

**{¶16}** The State agrees the evidence does not support a finding that Delawder actually committed a theft offense but argues that the evidence supports a finding of attempted theft. A theft occurs when a person, "with purpose to deprive the owner of property," knowingly obtains or exerts control over the property "[w]ithout the consent of the owner or person authorized to give consent[.]" R.C. 2913.02(A)(1). "Deprive" means to "[w]ithhold property of another permanently * * *." R.C. 2913.01(C)(1). R.C. 2923.02(A) outlines the requirements for a criminal "attempt": "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." "A person is guilty of a criminal attempt where he or she purposely does anything which is an act constituting a substantial step in a course of conduct planned to culminate in the commission of the crime, with the conduct needing to be strongly corroborative of the actor's criminal purpose in order to constitute a substantial step." *State v. Moore* (Jan. 20, 1992), Scioto App. No. 91CA1966, 1992 WL 10117, at *2,

citing *State v. Green* (1991), 58 Ohio St.3d 239, 240-241, 569 N.E.2d 1038.

{¶17} Delawder contends that the "greater amount of the credible evidence supported [his] assertion that he mistakenly entered Mr. Parker's truck." (Appellant's Br. 24). He argues that testimony about him "rummaging" in Parker's truck was "speculative at best" because the witnesses who claimed to see him by the truck admitted they could only see his legs. Delawder points out the fact that the truck was parked near a crowded bar and that "it would make no sense for [him] to break into a truck in the front of a crowded bar near closing time." (Appellant's Br. 24). He notes that Tammy Miller, the bartender, testified he left the bar about 10-15 minutes before her and that he "[c]ertainly * * * did not spend that amount of time breaking into a truck that was parked near the bar's front door." (Appellant's Br. 25). He points to testimony contradicting Miller's claim that he exited the bar through the Campbell Street door and argues that it lends credence to his testimony that he exited the bar after Miller. Delawder contends that "[o]bviously, it would make little sense to break into a vehicle outside of a busy bar in the presence of the bartender." (Appellant's Br. 25). According to Delawder, it makes more sense that a "drunk man who was not wearing his glasses would mistakenly enter the wrong truck," in light of the fact that his cousin had parked his truck near Parker's and Delawder's other cousin was leaning against the truck. (Appellant's Br. 24, 25). And Delawder argues that "[a]mple evidence supported [his] decision to run when the men exited the bar" (Appellant's Br. 25) because he heard Miller tell individuals "who had been involved in an altercation earlier that night that one of their vehicles was being broken into." (Appellant's Br. 26).

{¶18} The gist of Delawder's argument is that his version of the events is more

believable than the State's.  However, as we explained in *State v. Murphy*, Ross App.

No. 07CA2953, 2008-Ohio-1744, at ¶31:

> It is the trier of fact's role to determine what evidence is the most credible
> and convincing.  The fact finder is charged with the duty of choosing
> between two competing versions of events, both of which are plausible
> and have some factual support.  Our role is simply to insure the decision is
> based upon reason and fact.  We do not second guess a decision that has
> some basis in these two factors, even if we might see matters differently.

For the jury to conclude Delawder committed an attempted theft, it had to assess the

credibility of the State's witnesses and accept their testimony.  Having heard the

testimony and having observed the demeanor of the witnesses, the jury could choose to

believe all, part, or none of the testimony presented by any of the witnesses.  *State v.*

*Parish*, Washington App. Nos. 05CA14 & 05CA15, 2005-Ohio-7109, at ¶15.

{¶19}  The jury chose to believe the State's version of events, and we will not

substitute our judgment for that of the finder of fact under these circumstances.  The

evidence reasonably supports the conclusion that Delawder entered Parker's truck and

examined its contents with the purpose of taking Parker's property, before being

interrupted.  Miller testified that she saw Delawder bent over in the passenger side of

Parker's truck and that he had a look on his face like "oh crap" when he stood up.

McCleese also testified that he saw Delawder leaning inside Parker's truck and another

person on the driver's side of the vehicle.  McGlone testified to seeing Delawder and

another person who previously identified himself as Delawder's cousin leaning inside

Parker's truck.  He testified that after the men acknowledged seeing him, they fled from

the truck.  A number of witnesses testified that after the altercation at Delawder's home,

he changed his clothes, hid behind a bathtub, and partially shaved his head.  In

addition, members of law enforcement testified that Delawder told them the men at the

bar chased him because of their jealousy over a woman – he did not mention the incident with Spencer at the bar or that Miller mistakenly accused him of theft.

**{¶20}** From the description the State's witnesses gave of Delawder's position in the truck, his conduct upon being seen, and his inconsistent statements to law enforcement and at trial, the jury could infer he was attempting to deprive Parker of property in the truck. After reviewing the entire record, we cannot say that the jury lost its way or created a manifest miscarriage of justice when it found Delawder attempted to commit a theft offense. Because this finding could lay the foundation for his convictions for aggravated felony murder, aggravated robbery, and robbery we overrule Delawder's second assignment of error.

## IV.  Jury Instructions

**{¶21}** In his first assignment of error, Delawder contends that the trial court erred when it failed to: 1.) instruct the jury on a lesser included offense for both aggravated felony murder and felony murder; and 2.) properly instruct the jury regarding the aggravated felony murder charges. Generally, we use a de novo review to determine whether the court's jury instructions charge on all relevant questions of the law that the evidence supports. *Brown*, supra, at ¶34. However, the actual wording and format are within the trial court's discretion. Id. Here, Delawder acknowledges that he failed to object to these matters at the trial level and has forfeited all but plain error.

**{¶22}** "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). "A silent defendant has the burden to satisfy the plain-error rule[,] and a reviewing court may consult the whole record when considering the effect of any error on substantial rights."

*State v. Davis*, Highland App. No. 06CA21, 2007-Ohio-3944, at ¶22, citing *United*

*States v. Vonn* (2002), 535 U.S. 55, 59, 122 S.Ct. 1043, 152 L.Ed.2d 90.

**{¶23}**  For a reviewing court to find plain error: 1.) there must be an error, i.e. "a

deviation from a legal rule"; 2.) the error must be plain, i.e. "an 'obvious' defect in the

trial proceedings"; and 3.) the error must have affected "substantial rights," i.e. it must

have affected the outcome of the proceedings.  *State v. Barnes*, 94 Ohio St.3d 21, 27,

2002-Ohio-68, 759 N.E.2d 1240.  Furthermore, the Supreme Court of Ohio has

admonished courts that notice of plain error under Crim.R. 52(B) is to be taken "with the

utmost caution, under exceptional circumstances and only to prevent a manifest

miscarriage of justice."  Id., quoting *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d

804, at paragraph three of the syllabus.

A.  Lesser Included Offenses

**{¶24}**  Delawder contends that the trial court should have instructed the jury on

involuntary manslaughter as a lesser included offense of both aggravated felony murder

charges and the felony murder charge.  In reviewing a trial court's decision on whether

to give a jury instruction on a lesser included offense, we generally employ a two-tiered

analysis.  See *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889.

First, we determine whether one offense is in fact a lesser included offense of the

charged offense using a three-part test.  See id. at paragraph two of the syllabus, ¶26.

If we find that one offense is a lesser included offense of another, in the second tier of

the analysis we must determine whether the defendant was entitled to the instruction

based on the specific facts of the case.  Id. at ¶13.

**{¶25}**  Even if we presume Delawder qualified for an involuntary manslaughter

instruction under this test, we cannot find plain error in the court's failure to instruct the jury on this offense. "While a trial court does have a duty to include instructions on lesser included offenses where they are appropriate, a defendant still retains the right to waive such instructions." *Murphy*, supra, at ¶35, citing *State v. Clayton* (1980), 62 Ohio St.2d 45, 47, fn. 2, 402 N.E.2d 1189 (per curiam). Thus, Delawder could make the tactical decision not to request an instruction on lesser included offenses. See id.

    **{¶26}** As we explained in *Murphy* at ¶¶36-37:

> Generally, a failure to request a jury instruction on a lesser included offense is presumed to be a matter of trial strategy. *State v. Teets*, Pickaway App. No. 02CA1, 2002-Ohio-6799, at ¶26; *State v. Clark*, Lawrence App. No. 03CA18, 2004-Ohio-3843, at ¶15, citing *State v. Griffie* * * *, 74 Ohio St.3d 332, 658 N.E.2d 764, 1996-Ohio-71; see, also, *State v. Riley*, Franklin App. No. 06AP-P1091, 2007-Ohio-4409, at ¶5 (holding that, in light of this presumption, the failure to request an instruction on a lesser-included offense does not by itself establish plain error or the ineffective assistance of counsel); and *State v. Davis*, Summit App. No. 21794, 2004-Ohio-3246, at ¶18 ("Defendant in this case has offered no evidence showing that trial counsel's decision not to request those instructions was anything other than sound trial strategy aimed at acquiring a complete acquittal.").

> A defendant may not rely on the plain error rule to evade the consequences of his own trial strategy. *State v. Claytor* (1991), 61 Ohio St.3d 234, 240, 574 N.E.2d 472 ("What appears to have been a tactical decision [not to request the lesser included offense in jury instructions] in this case during the trial cannot now be converted into judicial error."); *State v. Noggle*, 140 Ohio App.3d 733, [745], 2000-Ohio-1927, 749 N.E.2d 309 ("[W]e note that plain error cannot be used to negate a deliberate, tactical decision by trial counsel."). * * *

See, also, *State v. Viers*, Jefferson App. No. 01 JE 19, 2003-Ohio-3483, at ¶48 ("By relying on the plain error doctrine, appellant basically contends that the trial court should have sua sponte instructed the jury on the lesser included offense * * *. * * * "[I]f it is not ineffective assistance of counsel, then how can it be error by the court; is a court to advise counsel that a lesser included instruction may be a wise trial tactic?").

**{¶27}** Delawder has not rebutted the presumption of trial strategy. See our rejection of Delawder's claim that trial counsel rendered ineffective assistance of counsel by not requesting an involuntary manslaughter instruction in Section VI.A. below. He cannot complain that the trial court committed plain error where counsel apparently was seeking an acquittal rather than inviting conviction on a lesser offense. Accordingly, we find no error in the trial court's failure to instruct the jury on involuntary manslaughter. In the absence of error, a plain error argument becomes meritless.

B. Aggravated Murder Instructions

**{¶28}** Delawder also contends that the trial court committed plain error by improperly instructing the jury on the aggravated felony murder charges. The court gave the jury the following instructions:

> Purpose to cause death is an essential element to the offense of Aggravated Murder.
>
> A person acts purposely when it is his specific intention to cause a certain result. It must be established in this case that at the time in question there was present in the mind of the defendant a specific intention to cause death.
>
> **When the central idea, essence, gist of the offense is a prohibition against or forbidding of conduct of a certain nature, a person acts purposely if his specific intention was to engage in conduct of that nature, regardless of what he may have intended to accomplish by his conduct.**
>
> Purpose is a decision of the mind to do an act with a conscious objective of producing a specific result or engage in specific conduct. To do an act purposely is to do it intentionally and not accidentally. Purpose and intent mean the same thing. The purpose with which a person does an act is known only to himself, unless he expresses it to others or indicates it by his conduct.
>
> The purpose with which a person does an act or brings about a result is determined from the manner in which it is done, the weapon used, and all the facts and circumstances in evidence.

You may infer a purpose to cause the death of another where the natural or probable consequences of the defendant's act is [sic] to produce death in light of all the surrounding circumstances. Such circumstances include the weapon used and its capability to destroy life. **If you find that the defendant used a deadly weapon against another in a manner calculated to destroy life, the purpose to cause death may be, but [is] not required to be, inferred from the use of the weapon. Whether an inference is made rests entirely with you.**

The State charges that the act of the defendant caused death to Jotham Lee Parker. Cause is an essential element to the offense. Cause is an act or failure to act which in the nature and continuous sequence directly produces death or physical harm to a person, and without which is [sic] would not have occurred.

**The defendant's responsibility is not limited to the immediate or most obvious result of the defendant's act or failure to act.  * * ***

* * *

**The defendant is also responsible for the natural and foreseeable consequences or results that follow in the ordinary course of events from the act or failure to act.**

(Emphasis added).

**{¶29}** Delawder contends that the court erred when it gave the jury the "central idea, essence, gist of the offense" instruction set forth above. Specifically, he argues that by instructing the jury that a person acts purposefully "regardless of what he may have intended to accomplish by his conduct" the court "thwarted the jury's duty to find that [he] specifically intended to cause death before it could return guilty verdicts for aggravated murder." (Appellant's Br. 17).

**{¶30}** The Supreme Court of Ohio has characterized similar language as "confusing in a murder prosecution which requires 'purpose.'" *State v. Wilson*, 74 Ohio St.3d 381, 393, 1996-Ohio-103, 659 N.E.2d 292. However, we must remain mindful of the fact that reviewing courts must consider jury instructions in their entirety. *State v.*

*Price* (1979), 60 Ohio St.2d 136, 398 N.E.2d 772, at paragraph four of the syllabus. "Ordinarily, reversible error does not consist of misstatements or ambiguities in only part of the instructions." *State v. Pettit* (July 5, 2000), Vinton App. No. 99CA529, 2000 WL 897993, at *3. The *Wilson* Court rejected an argument that the trial court committed plain error by using the "gist of the offense" language in an aggravated murder trial, in part because "[i]n the context of all the instructions given the jury, the court provided adequate instructions on the element of specific intent to kill." See *Wilson* at 393.

**{¶31}** Like the *Wilson* Court, we acknowledge that when read in isolation, the "gist of the offense" language is confusing. However, when read in context with the rest of the charge, it is clear the court provided the jury with adequate instructions on the specific intent to cause death. The court specifically told the jury that "*Purpose to cause death* is an essential element to the offense of Aggravated Murder." (Emphasis added). The court also told that jury that: "It must be established in this case that at the time in question there was present in the mind of the defendant *a specific intention to cause death.*" Thus, the "gist of offense language" instruction did not amount to plain error in light of all the instructions given to the jury. Therefore, we reject Delawder's argument.

**{¶32}** Next, Delawder contends that the court erred when it instructed the jury that: "If you find that the defendant used a deadly weapon against another in a manner calculated to destroy life, the purpose to cause death may be, but [is] not required to be, inferred from the use of the weapon. Whether an inference is made rests entirely with you." Delawder complains that the court should have told the jury that an inference, if made, is not conclusive. Delawder cites *State v. Stallings*, 89 Ohio St.3d 280, 291, 2000-Ohio-164, 731 N.E.2d 159, which indicates such language would accurately

reflect the law. Id. at 291. However, the court did not hold that the omission of a specific statement that the inference is not conclusive constitutes reversible error. And again, we cannot read the trial court's statements in isolation. See *Price*, supra, at paragraph four of the syllabus.

{¶33} Prior to instructing the jury about the permissible inference from use of a deadly weapon, the court specifically told the jury that: "The purpose with which a person does an act or brings about a result is determined from the manner in which it is done, the weapon used, *and all the facts and circumstances in evidence.*" (Emphasis added). The court also instructed the jury that: "You may infer a purpose to cause the death of another where the natural or probable consequences of the defendant's act is [sic] to produce death *in light of all the surrounding circumstances. Such circumstances include the weapon used and its capability to destroy life.*" (Emphasis added). When read in context, the charge sufficiently conveyed to the jury that the inference was not conclusive but just one factor for the jury to consider along with all of the other facts and circumstances in evidence. See *State v. Davenport* (Sept. 24, 1992), Richland App. No. CA-2851, 1992 WL 274729, at *5-6. Thus, we find no error in the court's instruction because the instructions as a whole conveyed the appropriate law.

{¶34} Finally, Delawder complains that the court erroneously told the jury that "[t]he defendant's responsibility is not limited to the immediate or most obvious result of the defendant's act or failure to act" and that "[t]he defendant is also responsible for the natural and foreseeable consequences or results that follow in the ordinary course of events from the act or failure to act." Delawder argues that this language permitted the jury to convict him based on a finding of less than specific intent to cause death. The

Supreme Court of Ohio has cautioned that the usefulness of this language in murder

cases is questionable given its "potential to mislead jurors" on the issue of intent. *State*

*v. Getsy*, 84 Ohio St.3d 180, 196, 1998-Ohio-533, 702 N.E.2d 866, quoting *State v.*

*Burchfield*, 66 Ohio St.3d 261, 263, 1993-Ohio-44, 611 N.E.2d 819.

{¶35}  However, the Court has declined to find plain error based on a

foreseeability instruction when, after viewing a charge in its entirety, the Court found

other instructions limited its prejudicial effect, i.e. the error was not outcome

determinative. *Getsy* at 196; *State v. Frazier*, 73 Ohio St.3d 323, 330-331, 1995-Ohio-

235, 652 N.E.2d 1000.  Here, the trial court gave explicit instructions on purpose and

specific intent prior to giving the foreseeability instruction.  These instructions limited

any prejudicial effect the foreseeability instruction may have had, and we find no plain

error in the trial court's instructions because they did not impact the outcome of the

proceeding.

{¶36}  In his appellate brief, Delawder indicates that the combined effect of the

three instructions he complains of "added substantial confusion" to the charge on

multiple occasions and "substantially lessened the jury's duty to find that [he] purposely

caused Mr. Parker's death before it could find [him] guilty of aggravated murder."

(Appellant's Br. 20).  However, as already noted when the charge is read in its entirety

either no error occurred or the other instructions limited any prejudicial effect.  Because

Delawder has failed to show that the court committed a plain error, we overrule the

second assignment of error.

## V.  Merger

{¶37}  In his third and fifth assignments of error, Delawder contends that the trial

court committed plain error when it failed to merge certain convictions at sentencing.

The Double Jeopardy Clause of the United States Constitution prohibits multiple

punishments for the same offense. *Monge v. California* (1998), 524 U.S. 721, 727-728,

118 S.Ct. 2246, 141 L.Ed.2d 615. See, also, Section 10, Article I of the Ohio

Constitution. To this end, the Ohio General Assembly enacted Ohio's multiple-count

statute, which subjects "allied offenses of similar import" to the judicial concept of

"merger" at sentencing. R.C. 2941.25 provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶38}** The question of whether offenses should merge under R.C. 2941.25

ordinarily presents a question of law we review de novo. *State v. Love*, Gallia App. No.

10CA7, 2011-Ohio-4147, at ¶34. But because Delawder failed to object under R.C.

2941.25 at the sentencing hearing, he has forfeited all but plain error. See Section IV.

for an explanation of this standard. However, the Supreme Court of Ohio has

previously held that imposition of multiple sentences in violation of R.C. 2941.25

constitutes plain error. See *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922

N.E.2d 923, at ¶31.

**{¶39}** Through a series of opinions the Supreme Court of Ohio has advised and

re-advised lower courts on the difficult task of applying Ohio's multiple-count statute to

determine which criminal convictions require merger. Recently, in the plurality decision

of *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Court

expressly overruled its then current test for merger. Under *Johnson* the trial court must

first determine "whether it is possible to commit one offense *and* commit the other with

the same conduct, not whether it is possible to commit one *without* committing the

other." Id. at ¶48. If the offenses are so alike that the same conduct can subject the

accused to potential culpability for both, they are "of similar import" and the court must

proceed to the second step. The court must then determine whether the offenses in

fact were committed by the same conduct, i.e. committed as a single act with a single

animus. Id. at ¶49. If so, merger is necessary. However, if the offenses resulted from

separate acts or were performed with a separate animus, or if the commission of one

offense will never result in the commission of the other, the offenses will not merge. Id.

at ¶51.

### A. Felony Murder and Felonious Assault

**{¶40}** In Count 7 the jury found Delawder guilty of committing felonious assault

on Parker under R.C. 2903.11(A)(2) by stabbing him with a knife. The jury also found

Delawder guilty of felony murder in Count 3 under R.C. 2903.02(B), predicated on

Delawder's commission of the felonious assault offense in Count 7.[2] In his third

assignment of error, Delawder contends that the trial court should have merged these

convictions. The State concedes error.

**{¶41}** It is apparent the offenses are of similar import. Because felonious

---

[2] The grand jury indicted Parker on three counts of felonious assault, naming a different victim in each count. The indictment does not specifically state which of these three counts served as the predicate offense for the murder charge. However, it is apparent that the murder charge is predicated on the felonious assault of Parker. To find felony murder under R.C. 2903.02(B), the jury had to find that Delawder caused the death of Parker "as a proximate result of the offender's committing or attempting to commit" felonious assault. The alleged felonious assault on Parker with a knife is the only charge that would satisfy this standard. Delawder's alleged felonious assault of McCleese and McGlone by use of a metal bar was clearly not a proximate cause of Parker's death.

assault was the predicate offense for the felony murder charge it was clearly possible for Delawder to commit both offenses with the same conduct, i.e. stabbing Parker. See *State v. Lewis*, Montgomery App. No. 23850, 2011-Ohio-1411, at ¶112. Even though felony murder and the predicate felony (felonious assault) are offenses of similar import, Delawder could still be sentenced for both crimes if Delawder committed the crimes "separately or with a separate animus." See R.C. 2941.25(B). Delawder asks us to find that the offenses were committed at the same time and with the same animus. However, we believe this matter should first be considered by the trial court. See generally *State v. Lewis*, Scioto App. No. 08CA3226, 2008-Ohio-6691, at ¶11.

{¶42} Though Delawder's argument does not specifically mention it, in sentencing him the trial court already merged his conviction for felony murder (Count 3) and aggravated felony murder (Count 2) with the other aggravated felony murder conviction (Count 1). So, the court has already found that Counts 1, 2, and 3 are offenses of similar import and were committed at the same time or with the same animus. Now it appears the felonious assault conviction in Count 7 would also be an offense of similar import in relation to Count 1. On remand, the court must consider whether the felonious assault was committed separately or with a separate animus from the aggravated felony murder charge in Count 1. If the offenses were committed separately or with a separate animus, they do not merge. And the court must separately sentence Delawder on his conviction for the felonious assault, i.e. Count 7. However, if the court finds the felonious assault was committed at the same time and with the same animus as Count 1, then Count 7 would merge, and the State would have to elect whether to sentence Delawder on Count 1 or Count 7. See *State v. Whitfield*,

124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, at paragraph one of the syllabus

("The state retains the right to elect which allied offense to pursue on sentencing on a

remand to the trial court after appeal."). And as we explain below, our resolution of

Delawder's fifth assignment of error could also impact the court's sentencing for these

offenses.

### B.  Aggravated Felony Murder and Aggravated Robbery

**{¶43}**  In addition, in Count 4 the jury found Delawder guilty of aggravated

robbery in violation of R.C. 2911.01(A)(1) and (3). The jury also found Delawder guilty

in Count 1of aggravated felony murder under R.C. 2903.01(B), predicated on

Delawder's commission of the aggravated robbery offense. In his fifth assignment of

error, Delawder contends that the trial court should have merged these convictions.

Delawder sought leave to add this assignment of error after he filed his appellate brief.

We granted his request and gave the State 10 days to respond. The State has not

done so.

**{¶44}**  Again, it is apparent these offenses are of similar import. Because

aggravated robbery was the predicate offense for the aggravated felony murder charge

it clearly was possible for Delawder to commit both offenses with the same conduct.

See *State v. Osman*, Athens App. No. 09CA36, 2011-Ohio-4626, ¶32 (finding that

felony murder, predicated on aggravated robbery, and aggravated robbery were

offenses of similar import). Likewise, even though aggravated felony murder and the

predicate felony (aggravated robbery) are offenses of similar import, Delawder may still

be sentenced for both crimes. However, in order to have the trial court sentence him for

both crimes, the State must show that Delawder committed the crimes "separately or

with a separate animus." See R.C. 2941.25(B). Delawder urges us to decide this issue in his favor. But as we noted above, we believe this matter should first be considered by the trial court. See generally *Lewis*, supra, at ¶11.

**{¶45}** In a footnote, Delawder recognizes that the trial court already merged certain offenses for sentencing but does not address the impact that has on our resolution of this assignment of error. In sentencing him, the trial court already merged his conviction for robbery (Count 5) with aggravated robbery (Count 4). It is apparent that the court has already found that Counts 4 and 5 are offenses of similar import and were committed at the same time or with the same animus. Thus the robbery charge in Count 5 is an offense of similar import in relation to the aggravated felony murder charge (Count 1) that is predicated on the aggravated robbery.

**{¶46}** On remand, the court must consider whether the aggravated felony murder in Count 1 was committed separately or with a separate animus from the aggravated robbery in Count 4. If the offenses were committed separately or with a separate animus, they do not merge.

**{¶47}** If the court finds the aggravated felony murder was committed at the same time as the aggravated robbery and with the same animus, Counts 1 and 4 would merge. But depending on the outcome of our other remand order, Count 1 might also merge with Count 7. Thus, Counts 1, 4, and possibly 7 would all merge for sentencing. So the court would have to allow the State to re-elect which offense to pursue in resentencing.

**{¶48}** Accordingly we sustain Delawder's third and fifth assignments of error and remand with the instructions outlined above.

## VI.  Ineffective Assistance of Counsel

**{¶49}**  In his fourth assignment of error, Delawder contends that trial counsel rendered ineffective assistance.  To prevail on a claim of ineffective assistance of counsel, an appellant must show that: 1.) his counsel's performance was deficient; and 2.) the deficient performance prejudiced his defense so as to deprive him of a fair trial. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, at ¶205, citing *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674.  To establish deficient performance, an appellant must show that trial counsel's performance fell below an objective level of reasonable representation.  *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, at ¶95.  To establish prejudice, an appellant must show a reasonable probability exists that, but for the alleged errors, the result of the proceeding would have been different.  Id.  The appellant has the burden of proof on the issue of counsel's ineffectiveness because a properly licensed attorney is presumed competent.  *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, at ¶62.

### A.  Lesser Included Offenses

**{¶50}**  Delawder contends that trial counsel should have requested a jury instruction or objected to the trial court's failure to instruct the jury on involuntary manslaughter as a lesser included offense of the aggravated felony murder and felony murder charges.  Even if we presume Delawder qualified for such an instruction, as we already noted, a failure to request a jury instruction on a lesser included offense is presumed to be a matter of trial strategy, and, therefore, does not establish ineffective assistance of counsel.  *Murphy*, supra, at ¶36, citing *Teets*, supra, at ¶26.  See, also,

*Griffie*, supra, at 333 ("The record may reveal that trial counsel did not request a certain jury instruction, but, without more, the court of appeals would have to guess as to why trial counsel did not make the request. Failure to request instructions on lesser-included offenses is a matter of trial strategy and does not establish ineffective assistance of counsel.").

**{¶51}** Delawder claims that "it cannot be said there was a strategic decision to forego the instruction * * *." (Appellant's Br. 33). Delawder vaguely argues that the "necessity of the instruction was apparent upon hearing the evidence adduced at trial * * *." (Appellant's Br. 34). He also argues that a conviction for involuntary manslaughter would have been an "appropriate outcome." (Appellant's Br. 34). But even if true, that fact would not preclude the possibility of counsel making a strategic decision to use an "all or nothing" approach (guilty or not guilty on the charged offenses) rather than giving the jury the option of convicting on a lesser included offense.

**{¶52}** Delawder also claims that "trial counsel previously indicated that Mr. Delawder wanted the instruction to be given." However, counsel merely mentioned the possibility of an involuntary manslaughter instruction. The fact that counsel recognized this possibility but ultimately did not request the instruction only bolsters the presumption that counsel made a strategic decision to use an "all or nothing" approach. Therefore, we reject Delawder's argument that trial counsel was ineffective for failing to request a jury instruction on the lesser included offense of involuntary manslaughter.

### B. Aggravated Felony Murder Jury Instructions

**{¶53}** Delawder also argues that trial counsel should have objected to the trial court's instructions on aggravated felony murder that he complained of in his first

assignment of error. However, we already determined that the trial court did not commit plain error by giving the "gist of the offense" instruction because it was not outcome determinative. See Section IV.B. He also makes a similar complaint about the lack of an objection to the inference instruction. And he complains about the lack of an objection to the foreseeability instruction. Again we found no prejudicial impact on the outcome of the trial. Accordingly, there can be no ineffective assistance in the lack of an objection on any of these instructions because of the lack of prejudice.

### C. Defense of Family

{¶54} Delawder was charged with the felonious assault of McCleese and McGlone. For these charges, the trial court instructed the jury on the defense of another. However, Delawder complains that trial counsel should have objected when the court instructed the jury on the use of deadly force, instead of non-deadly force, to defend another.

{¶55} "The proper standard for determining in a criminal case whether a defendant has successfully raised an affirmative defense under R.C. 2901.05 is to inquire whether the defendant has introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable men concerning the existence of such issue." *State v. Melchior* (1978), 56 Ohio St.2d 15, 381 N.E.2d 195, at paragraph one of the syllabus. We review this issue de novo. See *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 124, 1997-Ohio-401, 679 N.E.2d 1099, citing *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828 ("In reviewing a record to ascertain whether sufficient evidence exists to support the giving of an instruction, *an appellate court should determine* whether the record contains evidence from which reasonable

minds might reach the conclusion sought by the instruction.") (Emphasis added).  The trial court, as matter of law, cannot give a jury instruction on an affirmative defense if the defendant fails to meet his initial burden.  *State v. Powell* (Sept. 29, 1997), Ross App. No. 96CA2257, 1997 WL 602864, at *1, citing *State v. Reedy* (Dec. 11, 1996), Jackson App. No. 96CA782, 1996 WL 721072.

{¶56}  Deadly force "means any force that carries a substantial risk that it will proximately result in the death of any person."  R.C. 2901.01(A)(2).  A "substantial risk" is "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."  R.C. 2901.01(A)(8). "Defense of another is a variation of self-defense."  *State v. Moss*, Franklin App. No. 05AP-610, 2006-Ohio-1647, at ¶13.  And in the context of self-defense, we have found that "a deadly-force, self-defense instruction is appropriate when physical harm was inflicted by means of a deadly weapon or dangerous ordnance."  *State v. Hansen*, Athens App. No. 01CA15, 2002-Ohio-6135, at ¶29.

{¶57}  Undoubtedly the metal "pipe" that Delawder used qualifies as a "deadly weapon or dangerous ordnance."  The jury had to make such a finding to conclude Delawder was guilty of the felonious assault charges under R.C. 2903.11(A)(2), and Delawder implicitly admitted that by raising an affirmative defense to the charges.  See *Powell* at *2, quoting *State v. Roy* (Mar. 27, 1996), Adams App. No. 95CA590, 1996 WL 148602 ("An affirmative defense is one in which the defendant admits the elements of the crime but seeks to prove some additional fact or facts that absolves the defendant of guilt.").  Moreover, Delawder acknowledged that he might have swung the pipe at the men who chased him, i.e. McCleese and McGlone, testifying:  "[I]f I swung the pipe at

them, I swung at them."

{¶58} In addition, McCleese testified that after stabbing Parker, Delawder came after him and Parker with a tire tool of some kind. McCleese testified: "[A]nd as he gets to us, he's getting ready to swing it and I pull [Parker] down and duck and he swings right over our heads." McGlone testified that when Delawder swung at Parker and McCleese, "he was swinging about neck high[,]" and they had to duck. When McGlone shouted to distract Delawder, he turned and came after McGlone. According to McGlone, Delawder got close enough to swing at him once. Preston also testified that Delawder swung a metal object at McCleese and came "within probably inches" of hitting him. In addition, Preston saw Delawder running toward McGlone.

{¶59} Thus, evidence shows that after stabbing Parker in the head, Delawder attempted to swing a deadly weapon at the heads of Parker and McCleese, and then he immediately ran and tried to swing the same object at McGlone. Clearly, if one swings a metal bar at another person, particularly when aimed at the head, there is a strong possibility that action will proximately result in the person's death.

{¶60} Delawder did not present any evidence from which reasonable jurors would conclude his actions constituted the use of non-deadly force. Contrary to Delawder's argument, the fact that he missed McCleese and McGlone does not prove he used non-deadly force – Delawder's argument confuses the kind of force used with the results. Delawder also argues the non-deadly force instruction was warranted because it was "more reasonable to instruct the jury that [he] believed that his family was in danger of bodily harm, as opposed to death or great bodily harm." (Appellant's Br. 31). However, the level of the perceived threat is relevant in determining what level

of force a defendant is justified in using to defend another – not in characterizing the defendant's actual use of force as deadly or non-deadly.

**{¶61}** The evidence supports the defense of another instruction containing a use of deadly force component but not an instruction on non-deadly force. Because Delawder was not entitled to an instruction on non-deadly force, counsel was not deficient for failing to perform the futile act of seeking such an instruction. See *State v. Blevins*, Scioto App. No. 10CA3353, 2011-Ohio-3367, at ¶30. We reject Delawder's fourth assignment of error.

### VII. Conclusion

**{¶62}** We reject Delawder's first, second, and fourth assignments of error. We sustain his third and fifth assignments of error and remand for further proceedings consistent with this opinion.

JUDGMENT AFFIRMED IN PART,
REVERSED IN PART,
AND CAUSE REMANDED.

Kline, J., concurring.

**{¶63}** I concur in judgment and opinion with the following exception.  In my view,
we should review whether the evidence at trial warrants a particular jury instruction
under an abuse of discretion standard.  *See State v. Fulmer*, 117 Ohio St.3d 319, 2008-
Ohio-936, 883 N.E.2d 1052, ¶ 72 ("[T]he trial judge is in the best position to gauge the
evidence before the jury and is provided the discretion to determine whether the
evidence adduced at trial was sufficient to require an instruction."); *Accord State v.
Mitts*, 81 Ohio St.3d 223, 228, 690 N.E.2d 522 (1998); *State v. Wolons*, 44 Ohio St.3d
64, 68, 541 N.E.2d 443 (1989); *State v. Gary*, 1st Dist. No. C-090643, 2010-Ohio-5321,
¶ 23; *State v. Reese*, 2d Dist. No. 22907, 2009-Ohio-5046, ¶ 34; *State v. Chaney*, 3d
Dist. No. 13-07-30, 2008-Ohio-3507, ¶ 38; *State v. Carter*, 4th Dist. No. 10CA3169,
2010-Ohio-6316, ¶ 51; *State v. Cutts*, 5th Dist. No. 2008CA79; 2009-Ohio-3563, ¶ 72;
*State v. Jones*, 6th Dist. No. S-08-034, 2010-Ohio-1780, ¶ 20; *State v. Phipps*, 7th Dist.
No. 04 MA 52, 2006-Ohio-3578, ¶ 10; *State v. Sekic*, 8th Dist. No. 95679, 2011-Ohio-
4809, ¶ 34; *State v. Smith*, 9th Dist. No. 23542, 2007-Ohio-5119, ¶ 9; *State v. Peterson*,
10th Dist. No. 09AP-34, 2009-Ohio-5088, ¶ 15; *State v. Dukes*, 11th Dist. No. 2010-P-
27, 2011-Ohio-6849, ¶ 45; *State v. Tucker*, 12 Dist. No. CA2010-10-263, 2012-Ohio-
139, ¶ 31.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED IN PART, REVERSED IN PART and that the CAUSE IS REMANDED.  Appellant and Appellee shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

McFarland, J.:  Concurs in Judgment and Opinion.
Kline, J.:  Concurs in Judgment and Opinion with Opinion.


For the Court


BY: _____
       William H. Harsha, Judge



### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**