The State, ex rel. Toht, Appellant, *v.* McClure, Dir. of Safety, et al., Appellees.

(No. 2094—Decided May 5, 1950.)

*Mr. Strother B. Jackson* and *Mr. Frank W. Krehbiel,* for appellant.

*Mr. Mathias H. Heck,* prosecuting attorney, and *Mr. William H. Wolff,* for appellees.

WISEMAN, J. This is an appeal on questions of law from the judgment of the Common Pleas Court of Montgomery County, denying to the relator, Peter Michael Toht, a release in a proceeding in habeas corpus.

The record shows that Honorable Fuller Warren, Governor of the state of Florida, dispatched a requisition to the Honorable Frank J. Lausche, Governor of the state of Ohio, for the extradition of the relator as an alleged fugitive from justice from the state of Florida, where he had been indicted for the crime of highway robbery and afterwards convicted, sentenced and committed. The relator is being held by the police authorities of the city of Dayton on an executive writ issued by the governor of Ohio.

The hearings on the extradition and on the petition for the writ of habeas corpus were combined.

The relator assigns as error:

First, that the judgment is against the manifest weight of the evidence and is contrary to law.

Second, that the judgment should have been in favor of the relator.

Third, that the court erred in overruling the motion for new trial.

Fourth, for all other errors of law apparent upon the face of the record.

The record shows that the relator was convicted of robbery in the state of Florida in 1930. He escaped from the Florida state prison on March 20, 1931. At the hearing in the Common Pleas Court the relator proffered evidence to the effect that while in the Florida prison he was subjected to cruel and unusual punishment; that he was put in leg irons which were never removed while in the prison; that he was forced to work on the roads with chains and irons on his legs; that when he became weak and ill he was placed in what is called "the sweat box," a space about four feet square and eight feet high, with no toilet facilities, where he was confined for a period of 10 days and given daily only a small piece of cornbread and a bucket of water. It must be observed that the acts took place approximately 20 years ago. However, relator offered to produce evidence to the effect that such treatment of the prisoners in the state of Florida has continued to the present time. The rejection of this evidence by the trial court is the principal error assigned.

Counsel for the relator set forth in their brief certain facts which do not appear in the record and which we are not permitted to consider.

The proffered testimony in this case is sufficient to arouse the sympathy of the court. However, we are required to apply and follow fundamental principles of law.

The question presented for determination is whether the courts of this state, in a habeas corpus proceeding, have the power to consider whether the constitutional rights of the relator are likely to be violated by a sister state. In determining this question we must assume that the treatment accorded the relator 20 years ago is still the practice in the state of Florida. We also assume, without definitely deciding, that such treatment constitutes cruel and unusual punishment in vio-

lation of the provisions of the Constitution and statutes of the state of Florida, and the Eighth and Fourteenth Amendments to the United States Constitution. It may be conceded that the Eighth Amendment to the United States Constitution is not a limitation upon the states, except as implemented by the due-process clause of the Fourteenth Amendment to the United States Constitution.

This same question was presented to the Court of Appeals for Cuyahoga county in *Ex parte Quilliam*, 55 Ohio Law Abs., 336, 89 N. E. (2d), 493. The syllabus, as reported in 55 Ohio Law Abs., is as follows:

"1. The courts of Ohio upon habeas corpus proceedings have no power to consider whether the constitutional rights of the relators are being violated by a sister state.

"2. A writ of habeas corpus will not be granted to relieve a person convicted of a crime in a sister state from extradition to that state."

The court, on page 337, stated:

"It is the view of this court that the question here presented is one which seeks to invoke the jurisdiction of this court to pass upon a question which it is beyond the power of this court to consider, that is, whether or not a sister state is violating the constitutional rights of one charged and convicted of crime by its courts.

"If the constitutional rights of a prisoner are being violated in the sister state, such question should be presented by proper proceedings to the courts of that state for remedy. The only remedy that would be available by granting the writs here requested would be to release the prisoners in the state of Ohio, thus in effect commuting their sentences for serious crimes of which they have been found guilty.

"Section 2, Article 4 of the Constitution of the United States provides:

" 'A person charged in any state with treason, felony or other crime, who shall flee from justice and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime.'

"The purpose of this provision of the Constitution is to prevent a state from becoming an asylum for persons charged with crime or for convicts from another state."

In the foregoing opinion by the Court of Appeals there is no statement to the effect that the case involved the question of the infliction of cruel and unusual punishment. However, that case was taken to the Supreme Court of Ohio, where the appeal was dismissed on the ground that no debatable constitutional question was involved. That case is reported under the caption *Ex parte Quillian* v. *Sweeney, Sheriff,* 152 Ohio St., 368, 89 N. E. (2d), 494. A part of the headnote is as follows:

"Rejection of fugitive's evidence of cruel and unusual punishment in demanding state—Cruel and unusual punishment—Due process—Section 15, Article I, Alabama Constitution—Section 9, Article I, Constitution—Articles VIII and XIV, Amendments, U. S. Constitution."

Thus it appears that the identical question presented here was involved in that case.

A contrary view of the power of the court in a similar situation was taken by Judge Charles S. Bell (formerly a judge of the Supreme Court of Ohio) in an unreported opinion in a case arising in the Common Pleas Court of Hamilton County, Ohio, *Ex parte Willie Ross.* In an unreported opinion in *Commonwealth of Pennsylvania, ex rel. Moreland,* v. *Dye, Warden,* the Common Pleas Court of Allegheny County, in a case de-

cided at the January term 1948, granted a petition for a writ of habeas corpus under facts similar to those presented in the instant case. In *Johnson* v. *Dye, Warden,* the United States Court of Appeals for the Third Circuit, 175 F. (2d), 250 (judgment reversed, 338 U. S., 864, 94 L. Ed., 67, 70 S. Ct., 146), on May 17, 1949, reversed the judgment of the trial court and remanded the cause ''with the direction to issue the writ and discharge the petitioner,'' a fugitive from justice from the state of Georgia. In that case the relator claimed he not only had been subjected to cruel and unusual punishment during his confinement in prison in the state of Georgia, but that if he were returned to the state of Georgia to complete the sentence his life would be endangered and he feared that he would meet death by mob violence. See, also, *In re Hampton,* 1 N. P., 181, 2 O. D. (N. P.), 579.

It must be noted that in the instant case there was no evidence proffered showing what punishment will be inflicted on the relator when and if he is returned to the state of Florida. The most that can be claimed is that cruel and unusual punishment is likely to be inflicted. We are not confronted with a situation where the constitutional rights of the relator are *now* being violated, but where it is claimed that his constitutional rights are *likely* to be violated. There is no factual basis for concluding that the constitutional rights of all prisoners in the state of Florida are violated. Furthermore, we may properly indulge the presumption that the prison authorities of the state of Florida will obey the laws and will not violate the constitutional rights of the relator. In effect, this court is requested to release relator on a writ of habeas corpus, which is an extraordinary remedy and granted only where there is a clear showing, on a mere expectancy of a violation of a constitutional right. In *Johnson* v. *Dye, supra,*

the court invoked the judicial power to eliminate a threatened invasion of a basic constitutional right. However, we feel constrained to follow the judgment of the Supreme Court of Ohio in *Ex parte Quillian. supra.*

If the constitutional rights of the relator are violated after he is returned to prison in the state of Florida he must assert his rights in the courts of that state. The state of Florida and not Ohio is the proper forum in which to test this question.

*Release denied.*

MILLER, P. J., and HORNBECK, J., concur.