THE STATE, EX REL. GILPIN, APPELLEE, *v.* STOKES, SHERIFF, APPELLANT.

THE STATE, EX REL. ARMELL, APPELLEE, *v.* STOKES, SHERIFF, APPELLANT.

(Nos. C-840200, -201, -202 and -203— Decided July 18, 1984.)

*H. Fred Hoefle* and *Eugene J. Stagnaro, Jr.,* for appellees.

*Arthur M. Ney, Jr.,* prosecuting attorney, *William E. Breyer* and *Paul R. Markgraf,* for appellant.

BLACK, J. The state appeals from an order of the trial court in which it issued writs of habeas corpus to petitioners and denied the state's application for the extradition of petitioners to the Commonwealth of Virginia. We reverse that order, in compliance with clearly established law, and remand these cases for further proceedings.

The crime for which the Commonwealth of Virginia seeks extradition of the petitioners is the abduction of two children, Keisha Ambi Woody, approximately eight years of age, and Erin Shana Woody, approximately six years of age. Petitioner Kathy Woody Armell is their mother, and petitioner Flo Gilpin is their grandmother. We will review the events leading up to the arrest warrants in detail.

When Kathy divorced Arron Woody in September 1980, the Domestic Relations Court of Hamilton County, Ohio (Hamilton County court) awarded permanent custody of their two daughters to Kathy. Arron has not supported them as ordered, by reason of imprisonment and other causes not shown on the record. Kathy experienced physical difficulties (blood clot in a lung); she stated about three years after the divorce that she was "having a hard time emotionally." On August 27, 1983, she wrote to Tony and Wanda Woody, her brother-in-law and sister-in-law, who resided in Richmond, Virginia, and asked them "to

let the girls come and stay with you for the school year." An agreement was apparently reached, because on an undisclosed date in August or September 1983, the two daughters were sent to live with their aunt and uncle in Richmond. The sequence in which the following events took place is not clear on the record: the girls were enrolled in a parochial school; the city of Richmond Juvenile and Domestic Relations District Court (Richmond court) awarded temporary custody of both children to Wanda Woody and ordered that they "are not to be removed from the Commonwealth of Virginia unless prior court order [sic]"; Kathy found out that her letters and packages mailed to her daughters were not being delivered to them; and Kathy advised Wanda she wanted the children back and was told she could have them if she reimbursed Wanda for expenses totalling $2,000. The order of the Richmond court was issued on September 26, 1983, after an evidentiary hearing, and the matter was continued to November 30, 1983, for a hearing on the merits. We do not know what relief was being sought, or why, what testimony the court had before it, whether Kathy was served with notice, and, if so, how. She claims she knew nothing about that proceeding.

On October 10, 1983, Kathy and her mother Flo went to Richmond and brought the children back to Cincinnati. Warrants were issued by a Richmond magistrate that same day for the arrest of the two women for the abduction of the children, but they were not found in Virginia. The next day they were arrested at Flo's residence in Hamilton County, Ohio, on the basis of an electronic message delivered from the Richmond Police Department to the Sheriff of Hamilton County, Ohio. They were duly released on bond.

The Hamilton County court issued two orders on Kathy's application: on October 13, 1983, an order that no one except her could remove the children from the court's jurisdiction, and on October 19, 1983, an order that while custody shall remain with Kathy, the children shall be placed with Frank and Betty Gilpin (relationship not identified) for safekeeping. (We were advised in oral argument that Kathy and the two children, together with Kathy's new husband and another child, are now in Nebraska.)

On October 27, 1983, extradition proceedings seeking the return of Kathy and Flo to Richmond were initiated by affidavits executed by a Richmond detective, who alleged the women were guilty of abduction. On December 15, 1983, the Ohio Governor issued his warrants pursuant to R.C. 2963.01 et seq. On February 28, 1984, after evidentiary hearings, the Court of Common Pleas of Hamilton County, Ohio, denied the application for extradition and granted petitioners' writs of habeas corpus, having stated at the conclusion of the evidentiary hearings that being the custodian, Kathy "can't be charged with kidnapping her own kids." The state's single assignment of error, rephrased by us for clarity, is that the trial court erred in so ordering. We find we must agree, because despite appearances favoring the mother, established law leaves no alternative.

The following principles of law are clear beyond debate. The extradition of persons from the state where found (the asylum state) to a state where they are sought for criminal violations (the charging or demanding state) is governed by the United States Constitution,[1] an implementing federal statute virtually unchanged from the original version

---

[1] Clause 2, Section 2 of Article IV of the United States Constitution reads:

"A person charged in any State with treason, felony, or other crime, who shall flee

enacted in 1793,[2] and the Ohio Uniform Criminal Extradition Act.[3] *Michigan* v. *Doran* (1978), 439 U.S. 282, 286 *et seq.* The grant of extradition by the governor of the asylum state is prima facie evidence that the constitutional and statutory requirements have been met. The Supreme Court limited the issues to be considered by the court in the asylum state to four issues, as follows:

"Once the governor has granted extradition, a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive. These are historic facts readily verifiable." *Id.* at 289.

In brief, extradition is a "summary and mandatory proceeding."

The underlying reasons for these provisions are to enforce the constitutional mandate for full faith and credit between the states, to ensure that the merits of any criminal charge will be decided by the jurisdiction in which the criminal acts were performed, and to prevent the Balkanization or fragmentation of criminal administration among multiple jurisdictions. The Supreme Court stated: "To allow plenary review in the asylum state of issues that *can be fully litigated* in the charging state would defeat the plain purposes of the summary and mandatory procedures authorized by Article IV, § 2." (Emphasis added.) *Id.* at 290. That remark was quoted with approval in the later case of *Pacileo* v. *Walker* (1980), 449 U.S. 86, 88.

In decisions rendered subsequent to *Michigan* v. *Doran, supra,* the Ohio Supreme Court added two considerations for the governance of extradition in Ohio: a fifth issue to be considered by the court in the asylum state (whether the extradition is sought to enforce a civil liability),[4] and the requirement that the fugitive, if he or she asserts some invalidity of arrest under the governor's

---

from justice, and be found in another State, shall on demand of the executive authority of the State from which he fled, be delivered up, to be removed to the State having jurisdiction of the crime."

[2] Section 3182, Title 18, U.S. Code reads: "Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged."

[3] R.C. 2963.01 *et seq.*

[4] This "fifth issue" is found in *Carpenter* v. *Jamerson* (1982), 69 Ohio St. 2d 308, 310-311 [23 O.O.3d 290], and *In re Harris* (1959), 170 Ohio St. 151 [10 O.O.2d 99]. It can be argued that this issue is subsumed in "(b) whether the petitioner has been charged with a crime in the demanding state," because it is reasonable to assume that if the conduct of the fugitive violated a criminal law in the demanding state, the fact that the prosecution might result in benefiting a private citizen on a civil claim is immaterial so long as that benefit was not the purpose of making the criminal charge or bringing the fugitive back into the state and that the criminal prosecution is not used for any private purposes.

warrant, rebut its presumed validity by proof beyond a reasonable doubt. *In re Rowe* (1981), 67 Ohio St. 2d 115 [21 O.O.3d 73]. It is noteworthy that the issue in that case was the factual question whether the petitioners were "present in the demanding state at the time of the commission of the alleged crime," R.C. 2963.03, that fourteen witnesses said they were not while two said they were, that other expressions of the degree of proof required of petitioners' evidence were "conclusively proved" and "clear and convincing," that the court chose the highest degree of proof in Ohio ("beyond a reasonable doubt"), and that the court held that the conflicts in the evidence before it made the petitioners' evidence insufficient to prove their absence from the demanding state beyond a reasonable doubt. The most recent Ohio Supreme Court case holds that a petitioner's unsupported testimony on a factual issue is not sufficient to establish his version of the facts beyond a reasonable doubt. *Bradley* v. *Hickey* (1982), 70 Ohio St. 2d 277 [24 O.O.3d 363].

The trial court's order granting habeas corpus in the instant case was erroneous. It cannot be substantiated on the grounds the court articulated at the evidentiary hearing, because it is not the law that a divorced parent can never be guilty of kidnapping his or her own child. Further, the order cannot be substantiated on any other basis. Turning to the four issues mandated by the United States Supreme Court[5] and the record before us, we come to the following conclusions:

a. The extradition documents on their face are in order, because they comply with R.C. 2963.03. The Virginia Governor's demand was in writing; it alleged that the petitioners were in the demanding state at the time of the commission of the crime (and they admitted that they were), and that they fled from Virginia (also admitted); the demand was accompanied by a copy of an affidavit made before a magistrate substantially charging them with having committed a crime under Virginia law. The demanding papers also included the original arrest warrant; it did not include an affidavit seeking that original warrant because the sworn statements of the charging detective did not need to be reduced to writing under Virginia law. The demand papers, further, included an explanatory and charging affidavit of the Commonwealth's Attorney for the city of Richmond as well as copies of the pertinent Virginia statutes on abduction. All demanding papers and the Ohio Governor's warrant were duly executed.

b. The petitioners were charged with a crime in Virginia.[6] Implicitly con-

---

[5] We are not persuaded by petitioners' argument that the court should as a matter of public policy rule that extradition demands are to be ignored and rejected when made on charges arising out of marital discord such as child stealing. See 26 Ohio Jurisprudence 3d (1981) 358, Criminal Law, Section 612. No court has ever read that limitation into the constitutional mandates.

[6] We are not impressed with petitioners' arguments that the affidavits accompanying the Virginia extradition papers were deficient (1) because they failed to allege the culpable mental state (intent) that is an element of the alleged crime, or (2) because under certain circumstances, abduction in Virginia is a misdemeanor rather than a felony. *First,* the affidavits or warrants required to accompany the extradition papers are not charging documents in the technical sense and need not set forth the culpable mental state. *Second,* it is not fatal to the constitutional right of a demanding state that the offense be a misdemeanor rather than a felony; nothing in the constitutional or statutory provisions makes it impossible to obtain the return of a fugitive from a misdemeanor, although the custom or policy may in some demanding states be that extradition will not be sought in the first instance when the crime is a petty one or a lesser one.

ceding that a divorced mother may conceivably be charged with abduction or kidnapping of her own children, petitioners argue that, nevertheless, Kathy had permanent custody of the two daughters under the order of the Hamilton County court and that she had received no notice of the award of temporary custody by the Richmond court. The argument is multiple: the Richmond court had no authority or power to award temporary custody, but if it did, due process was not observed because the mother had no notice of those proceedings. These arguments may eventually prevail, and it may be that Kathy was not guilty of abduction. Those issues, however, go to the merits of the charge and are pertinent to the determination of guilt or innocence. They may not be inquired into in Ohio, under R.C. 2963.18, and they are issues that can be fully litigated in Virginia, under *Michigan* v. *Doran, supra.* The procedures created by the United States Constitution do not give to an Ohio court of common pleas the authority or power to review and reverse an order of a Virginia juvenile and domestic relations court on either constitutional or statutory grounds. Further, if the argument is that the temporary award was void *ab initio* because the Richmond court lacked all subject matter jurisdiction whatsoever as a matter of law, we find nothing in the record to substantiate that argument conclusively. Admittedly, the issue of subject matter jurisdiction may be litigated in Ohio as well as in Virginia, but petitioners cannot prevail on the basis of the record before us.

Turning to Ohio's "fifth issue," the obverse of whether the petitioners were charged with a crime (that is, whether the extradition procedure was being used to enforce a civil liability), petitioners utterly failed to rebut beyond a reasonable doubt the clear and unequivocal allegations in the affidavit of the Commonwealth's Attorney that the application was not made to collect a debt or to bring the fugitives within Virginia in order to serve them with civil process, or for any private purpose, and that the Virginia criminal proceedings would not be used for any of those purposes.[7] Petitioners may have raised a suspicion about this issue, but they failed to demonstrate their contentions beyond a reasonable doubt.[8]

c. The petitioners are the persons named in the request for extradition, no question of any nature was raised about this issue.

d. The petitioners are fugitives. They concede that they were in Virginia at the time of the alleged crime, and took the children to Ohio. If petitioners argue that they are not fugitives because the charges against them are defective, those arguments were discussed and disposed of under conclusion b above. If they argue that they are *fugitives from injustice* because their return to Virginia will subject them to procedures that will be unconstitutionally conducted, the argument is neither pertinent, *Pacileo* v. *Walker, supra; State, ex rel. Toht,* v. *McClure* (1950), 87

---

[7] Paragraph 7 of the Commonwealth Attorney's affidavit reads:

"This application is not made for the purpose of enforcing the collection of a debt, or of removing the alleged fugitive to a foreign jurisdiction with a view there to serve her with civil process, or for any private purpose whatever, and if the requisition applied for be granted, criminal proceedings shall not be used for any of the said objects."

[8] We are aware that the extradition procedure may conceivably remand the petitioners to Virginia under charges that may ultimately be ruled invalid. In that event, petitioners may or may not have claims for false arrest, abuse of process or other wrongful act. Under the constitutional mandates governing extradition procedures, those considerations are not material to the issues that can be considered by the courts of the asylum state.

Ohio App. 520 [43 O.O. 313], nor established in the proceedings *sub judice* by proof beyond a reasonable doubt.

The single assignment of error has merit. We reverse the issue of the writs of habeas corpus and the denial of extradition. We remand these cases for further proceedings.

*Judgments reversed and*
*causes remanded.*

SHANNON, P.J., and PALMER, J., concur.

PALMER, J., concurring. I concur with some reluctance. I think it is demonstrably unfortunate that, with all the serious problems facing law enforcement authorities, valuable time and scarce money should be invested in setting the cumbersome machinery of extradition at work so that a mother (and a grandmother), to whom it seems clear that an Ohio court with unquestioned jurisdiction to proceed has awarded custody, may be charged in Virginia with a felony of recovering her own children. It becomes doubly suspect when we are informed by counsel that the mother and her children are now lawfully domiciled in Nebraska, beyond the effective power of Ohio to surrender, and that the full majesty of the law will presumably descend on the resident grandmother. Doubtless, all of this was in the trial court's mind when it granted the writs.

If, as my brother Black convincingly argues and I am constrained to agree, the courts are without authority to interrupt otherwise regular proceedings between the governors of the two states, then we are witness to one of the more unfortunate usages of legal process. If the mother and grandmother erred in using self-help to recover the children, as very arguably they did, the error is now being redressed, in my judgment, in a resoundingly disproportionate manner.