THE STATE OF OHIO, APPELLANT, *v.* JOHNSON, APPELLEE.

[Cite as State *v.* Johnson (1991), 58 Ohio St. 3d 40.]

(No. 90-106—Submitted December 19, 1990—Decided February 27, 1991.)

*Wilfrid G. Dues,* prosecuting attorney, and *Rebecca J. Ferguson,* for appellant.

*Stephen R. Bruns,* for appellee.

ALICE ROBIE RESNICK, J. Appellee was convicted of violating R.C.

2905.04(A), which provides that "[n]o person, by any means and with purpose to withhold a minor from the legal custody of his parent, guardian, or custodian, shall remove the minor from the place where he is found." Under Ohio law, a reviewing court may not reverse a conviction when there is substantial evidence upon which the trial court could reasonably conclude that all elements of the offense have been proven beyond a reasonable doubt. *State* v. *Eskridge* (1988), 38 Ohio St. 3d 56, 526 N.E. 2d 304, at paragraph two of the syllabus. In the case at bar, there is substantial evidence to support the trial court's finding that the appellee removed Lisa C. from the place where she was found and had the "purpose to withhold" Lisa C. from the legal custody of her mother. Consequently, we reject the appellee's contention that her conviction must be reversed as being against the manifest weight of the evidence.

The evidence presented at trial indicates that the appellee removed Lisa C. from their neighborhood with the intention of starting a new life with Lisa C. away from her mother. Although the appellee did not admit that a romantic relationship existed between Lisa C. and herself, several witnesses, including Lisa C.'s mother, Lisa C.'s sister Amanda, and Lisa C. herself, testified that the relationship was not purely platonic.[1] Moreover, as the letters written by the appellee to Lisa C. from jail clearly indicate, appellee desired to have a romantic relationship with Lisa C. prior to and during their excursion to Indiana.

Appellee knew, however, that she could not maintain a romantic relationship with Lisa C. if the two continued living on Paint Road in New Paris, Ohio. Appellee knew that Lisa C.'s mother disapproved of the appellee's contact with Lisa C. At trial, Lisa C.'s mother testified that she had personally spoken to the appellee and told her to stay away from Lisa C. Appellee was aware of the fact that it was Lisa C.'s mother who had repeatedly filed charges against her for, *inter alia*, attempted interference with custody. Finally, appellee knew that Lisa C.'s mother had prohibited Lisa C. from having any further contact with her. In short, the evidence presented at trial suggests that appellee knew that Lisa C.'s mother was determined to keep the appellee away from Lisa C., and concomitantly, that appellee knew she would not be able to maintain a relationship with Lisa C. unless she deprived Lisa C.'s mother of control over the girl.

Not only did appellee realize that she would need to wrest control of Lisa

---

[1] Testimony of Janet Elaine:

"Q. [Prosecutor:] * * * Can you describe briefly what, if any, problems you have had during the last year with Lisa Johnson?

"A. [Lisa C.'s mother:] * * * And I always, this is my opinion, felt that her intent was to take my child from me forever. And her motive was sexual."

Testimony of Amanda C.:

"Q. [Prosecutor:] * * * And what was the situation between your sister and Lisa Johnson?

"* * *

"A. [Amanda C.:] Ok, I guess she had a crush on her, or something. And she was trying to chase after her, and we'd been fighting that for about a year."

Testimony of Lisa C.:

"Q. [Prosecutor:] * * * Did the two of you hold hands?

"A. [Lisa C.:] Yeah.

"Q. [Prosecutor:] Did the two of you kiss?

"A. [Lisa C.:] Yeah."

C. from her mother in order to have a relationship with Lisa C., but appellee's words and actions demonstrate the intent to implement this plan. Without discussing it with Lisa C. in advance, appellee left New Paris, and crossed the state line into Indiana. Upon reaching Centerville, Indiana, appellee abandoned her car and the pair began a five-day trek on foot toward the house of appellee's friend, Debbie. Lisa C. testified at trial that the appellee told her they were going to Debbie's to borrow her car so that they could "get away faster" and get where they were going faster.

According to the trial testimony of Lisa C., during the five days that Lisa C. and appellee were on the road together, appellee told Lisa C. that she would take her "where * * * [the two of them] wouldn't have to hide any more * * *." No words could more clearly reveal appellee's intent to deprive Lisa C.'s mother of custody and control of her daughter. Appellee knew that unless she took Lisa C. to a place where Lisa C.'s mother could not observe or restrict her daughter's actions, that appellee and Lisa C. would have no choice but to continue to conceal their relationship. As long as Lisa C.'s mother retained control over Lisa C. and could obtain court orders preventing the appellee from seeing her daughter, appellee would have no choice but to see Lisa C. in secret. Therefore, appellee's intent to take Lisa C. where the two of them could be together openly is compatible only with the intent to deprive Lisa C.'s mother of custody and control of her daughter in violation of R.C. 2905.04(A).

Appellee claims that she lacked the intent to withhold custody from the legal custodian as required by R.C. 2905.04(A) because she did not hold Lisa C. against her will. The evidence presented at trial does suggest that Lisa C. accompanied the appellee voluntarily. At trial, Lisa C. testified that she entered the appellee's car of her own free will. Moreover, Lisa C. and the appellee both testified that on at least two separate occasions during their five-day journey, appellee gave Lisa C. the option of returning home. While there is no reason to discount this evidence, it in no way absolves the appellee from criminal liability.

R.C. 2905.04(A) does not require the use of force or coercion. The statute expressly prohibits the removal of a child from the place where he or she is found "by any means"; it contains no reference to force, the threat of force, or the wishes of the minor involved. In fact, the child's attitude toward the adult offender is completely irrelevant to the question of the adult's liability for purposefully withholding the child from his or her legal custodian. An unemancipated minor does not possess custodial rights and, thus, may not decide for herself who shall be her parent or custodian. Therefore, the acquiescence of a minor is no defense to an allegation of child stealing in violation of R.C. 2905.04 (A); it is the adult's intent to purposefully withhold the child from his legal custodian, and not the child's attitude toward the adult offender, that is determinative of liability. See, e.g., State v. Wengatz (1984), 14 Ohio App. 3d 316, 14 OBR 381, 471 N.E. 2d 185, holding that a noncustodial parent who takes a child from his or her lawful custodian may be liable for child stealing. The child's parental preference was not at issue in the case. See, also, State, ex rel. Gilpin, v. Stokes (1984), 19 Ohio App. 3d 99, 19 OBR 186, 483 N.E. 2d 179.

Accordingly, the fact that the appellee did not force Lisa C. to accompany her to Indiana and that Lisa C. may have independently desired to go

to Indiana with appellee has no bearing on appellee's liability under the statute. By the terms of the statute, liability turns entirely on the appellee's state of mind. As previously discussed, the evidence presented at trial supports the conclusion that the appellee intended to withhold Lisa C. from her mother's custody and control. Therefore, the trial court did not err in finding the appellee guilty of child stealing. Accordingly, we reverse the judgment of the court of appeals and reinstate appellee's conviction.

*Judgment reversed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.