[Cite as *State v. Stapleton*, 2012-Ohio-4964.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 12CA3477 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| JEFFREY K. STAPLETON, | : | |
| | : | **RELEASED 10/23/12** |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Bryan Scott Hicks, Lebanon, Ohio, for appellant.

Mark E. Kuhn, Scioto County Prosecutor, and Matthew A. Wisecup, Scioto County Assistant Prosecutor, Portsmouth, Ohio, for appellee.

_____

Harsha, J.

{¶1}   This case stemmed from an incident in which Jeffrey Stapleton allegedly took a guitar from the home of Donald Burke, an 84-year-old man.  After a jury found Stapleton guilty of burglary and theft from an elderly person, the trial court merged the offenses for sentencing purposes.  On appeal, Stapleton contends that the jury's findings of guilt were against the manifest weight of the evidence because certain witnesses were not credible, the state's witnesses gave conflicting testimony about the date the incident occurred, and other people had access to the guitar.  Contrary to his argument, the state's witnesses gave fairly consistent accounts of when the incident happened.  Moreover, we leave credibility determinations to the finder of fact.  And because the jury could reasonably return a guilty verdict based on the state's version of events, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse the judgment below.

I.  Facts

**{¶2}** The Scioto County grand jury indicted Stapleton on one count of burglary, a second degree felony, and one count of theft from an elderly person or disabled adult, a fourth degree felony.  Stapleton pleaded not guilty to the charges, and the matter proceeded to a jury trial.  Before trial concluded, the court granted the state's motion to amend the theft from an elderly person or disabled adult charge to a fifth degree felony.

**{¶3}** Donald Burke, age 84, testified he hired Stapleton to mow his lawn. Stapleton worked one week and used Burke's tools.  One day, Burke let Stapleton in the house for water.  This was the only time he had Burke's permission to come inside. Stapleton walked around the house and then approached Burke and said, "[I]s that a guitar laying in there on the bed in that case?"  Burke said that it was, and Stapleton dropped the subject.  Stapleton had referred to a guitar Burke had on the bed in a spare bedroom.  Burke could not recall what kind of guitar it was but testified that it was "brand new" and in a black case.  Before Stapleton went back outside, Burke told Stapleton that he planned to take a nap.  Sometime after his nap, Burke discovered the guitar was missing and contacted law enforcement.  He could not recall the exact date this incident occurred.  Burke testified that a day or two later, he noticed other items were missing from the home, like tools and a bank with money in it.  Burke testified that he never had contact with Stapleton after the guitar disappeared.  On cross-examination, defense counsel asked Burke who else had been to his home.  Burke responded, "No one.  No one."  Then defense counsel asked if Burke had "a health care provider, a lady that helps you -- [.]"  Burke stated that he did.

**{¶4}** Sonia Floyd testified that Burke is a customer of her garbage collection

business.  She also knows Stapleton because they live in the same neighborhood.  One rainy day, she saw Stapleton coming from Burke's driveway on a bicycle with a black guitar case.  He flagged her down for a ride.  The "first thing" Floyd asked him was whether the guitar was stolen.  Stapleton said if it was, he "wouldn't have it out in the broad daylight."  She drove him to the trailer of someone with the last name Steele.  About an hour later, Floyd saw Stapleton again, and he flagged her down for another ride.  He no longer had the guitar case; Stapleton said he sold the guitar.  Sometime later, Burke told her that Stapleton had stolen his guitar and other items.  Floyd told Burke about her encounter with Stapleton.

{¶5}    Afterwards, Floyd went to the hotel where Stapleton lived at to confront him, but he was not there.  She eventually did talk to Stapleton.  Floyd testified that she thought the conversation occurred after she gave law enforcement a written statement on May 30, 2011.  Floyd told him she was upset and did not appreciate "being used for rides for stolen goods."  Stapleton denied stealing the guitar and claimed someone else gave it to him nine years ago.  Floyd testified, without objection, that she asked that person about the guitar, and he denied giving it to Stapleton.  Initially, Floyd testified that she saw Stapleton with the case a "couple days" before she gave her statement.  Later, Floyd testified that she saw Stapleton with the guitar "a couple of weeks" before she gave the statement.  In her written statement, Floyd wrote that the incident occurred "[a]bout two weeks ago."  Floyd denied loaning Stapleton money.  Floyd testified that she provided Stapleton with "$5 here, $7 there" in the past as gifts but would never loan him money because "I know [Stapleton's] not going to pay anything back."

{¶6}    Matthew Steele testified that he used to be friends with Stapleton.  He

testified that in May or June of 2011, Stapleton came to his home and tried to sell an Esteban guitar to him or trade it "[f]or whatever he could get out of [it]." Steele claimed the guitar was in "good shape" and stored in a black case. Steele declined the offer, and Stapleton left. Steele believed he headed toward Steele's dad's house. Steele later learned Stapleton sold the guitar to one of Steele's dad's friends. At some point, Stapleton talked to Steele because he was "concerned about getting [the guitar] back." The prosecutor asked Steele why Stapleton wanted it back, and Steele testified without objection, "I guess the gentleman that [Stapleton] stole it from filed charges and he got in trouble for it, so he needed to get it back." Steele admitted that a few days prior to trial, he was arraigned, apparently for drug possession and drug trafficking charges. He entered into an agreement with the prosecutor whereby he would plead guilty to the drug possession charges, receive a three-year sentence, and the prosecutor's office would recommend his release after a year if he testified truthfully in this case and met other requirements. Steele also admitted that he had previous convictions for breaking and entering, assault, drug trafficking, and tampering with evidence.

{¶7} Steven VanHoose, a Scioto County Sheriff's Office deputy, testified that on May 18, 2011, he responded to a call about a theft at Burke's home, which he believed occurred the day before. Burke said he let Stapleton, who mowed his lawn, inside the house for a glass of water. Once inside, Stapleton started roaming through the house out of Burke's sight. Later, Burke discovered his guitar missing. VanHoose testified that it was an Esteban or Estebon guitar that Burke kept in a black case.

{¶8} Matthew Spencer, a Scioto County Sheriff's Office detective, testified that he spoke to Stapleton about the guitar in June 2011. Stapleton denied taking it. He

admitted going to Burke's home, where he mowed the grass and did some air conditioning work. Stapleton claimed Floyd saw him carrying a weed eater and told law enforcement it was a guitar case because she was mad he had not repaid a $40 loan.

{¶9}  Stapleton testified that he worked for Burke almost two months, starting April 26, 2011. Stapleton denied taking a guitar or any other item from Burke. One day, Burke let him come in the kitchen for water. Burke's nurse was present, and Burke asked her to put an air conditioner in a window in the spare bedroom. The nurse said it was too heavy, so Stapleton did it. Burke stood next to him the whole time and handed him the screws and screwdriver; the nurse was also present for the installation. Stapleton did not see a guitar on the bed. Stapleton claimed Burke had nurses in the house every day. Stapleton denied leaving Burke's house with a black guitar case. He claimed he rode his bike to Burke's house every day and "always carried a weed eater on the front of the handlebars." Stapleton claimed that Burke's weed eater did not work. He recalled seeing Floyd drive by Burke's house "about the 18th of May," but did not flag her down. He rode his bicycle, with a weed eater, to Steele's home and cut the grass there. Stapleton claimed that on March 23, 2011, he did travel on the road in front of Burke's home with "an old guitar" someone named Kyle Goodrich gave him, and Floyd passed him. He claimed that when he worked for Burke in June, Burke never said anything about a missing guitar. Stapleton admitted that he was convicted of fifth degree felony theft in 2007 and misdemeanor theft in 2009.

{¶10}  The jury found Stapleton guilty of both counts. The court concluded that his crimes constituted allied offenses of similar import, and the state elected to proceed on the burglary charge for sentencing purposes. This appeal followed.

## II. Assignment of Error

{¶11} Stapleton assigns one error for our review: "THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

## III. Manifest Weight of the Evidence

{¶12} In his sole assignment of error, Stapleton contends that the jury's verdict was against the manifest weight of the evidence. Even though the trial court only sentenced Stapleton on the burglary offense, we construe this assignment of error as a challenge to the jury's adjudication of guilt on both the burglary and theft from an elderly person or disabled adult charges. "In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Brown*, 4th Dist. No. 09CA3, 2009-Ohio-5390, ¶ 24, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A reviewing court "may not reverse a conviction when there is substantial evidence upon which the trial court could reasonably conclude that all elements of the offense have been proven beyond a reasonable doubt." *State v. Johnson*, 58 Ohio St.3d 40, 42, 567 N.E.2d 266 (1991), citing *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988), paragraph two of the syllabus.

{¶13} Even when acting as a thirteenth juror we must still remember that the weight to be given evidence and the credibility to be afforded testimony are issues to be determined by the trier of fact. *State v. Frazier*, 73 Ohio St.3d 323, 339, 652 N.E.2d

1000 (1995).  The fact finder "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony."  *Seasons Coal Co. v. City of Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).  Thus, we will only interfere if the fact finder clearly lost its way and created a manifest miscarriage of justice.  Moreover, "[t]o reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required."  *Thompkins*, *supra*, at paragraph four of the syllabus, construing and applying Section 3(B)(3), Article IV of the Ohio Constitution.

{¶14}  The jury found Stapleton guilty of burglary, in violation of R.C. 2911.12(A)(1), which provides:  "No person, by force, stealth, or deception, shall do any of the following:  * * * Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense[.]"  The jury also found him guilty of the offense the state claimed he had purpose to commit in Burke's house, i.e., theft from an elderly person or disabled adult, in violation of R.C. 2913.02(A)(1) and (B)(3).  Under R.C. 2913.02(A)(1):  "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:  * * * Without the consent of the owner or person authorized to give consent[.]"  R.C. 2913.02(B)(3) provides that, with certain exceptions not relevant here:  "[I]f the victim of the offense is an elderly person or disabled adult, a violation of this section is theft from

an elderly person or disabled adult * * *.  Except as otherwise provided in this division, theft from an elderly person or disabled adult is a felony of the fifth degree."  An elderly person is someone "who is sixty-five years of age or older."  R.C. 2913.01(CC).

{¶15}  Stapleton contends that he did not sneak back into Burke's home while he slept and take his guitar.  He claims the state's witnesses lack credibility and that their varying testimony about the specific day the guitar went missing, coupled with testimony that "other people had regular access to the guitar," should have "created reasonable doubt as to whether Stapleton was actually the one who took it."  (Appellant's Br. 7).  Specifically, Stapleton argues that Burke is an "older gentleman with very faulty memory who never actually saw Stapleton with the guitar."  (Appellant's Br. 6).  Stapleton complains that Burke could not recall the exact date the guitar went missing.  He claims that Burke initially testified that no one was in the house except Stapleton but later admitted that "in fact he had home health aides in his home."  (Appellant's Br. 6).  Stapleton also argues that Burke claimed "numerous other items were missing, although that apparently was not of enough concern to tell the police."  (Appellant's Br. 6).  Stapleton suggests that Steele is not credible because he is a "career criminal" and had an incentive to lie because of his plea agreement.  He argues that Steele "even places the supposed offer to sell in June, which would have been impossible according to the other testimony."  (Appellant's Br. 6).  Stapleton argues that Floyd could not "pin down the date" she allegedly saw him with a guitar case.  (Appellant's Br. 6).  "First she says it was a day or two before May 30[th], then she says it was actually a couple of weeks before.  But a couple of weeks before would have placed the date on a different date than when Burke claimed the guitar to be missing."  (Appellant's Br. 6).

{¶16} Stapleton mischaracterizes some of the evidence. Burke never admitted that he had home health aides in his home. Defense counsel asked if Burke had "a health care provider, a lady that helps you," and Burke stated that he did. However, Burke never testified that this person assisted him at home or testified about when he received assistance. In addition, it is unclear from the testimony whether Burke ever reported to law enforcement that other items were missing from the home. It is possible that he did but law enforcement chose not to pursue the matter because unlike with the missing guitar, they had no witnesses who claimed to actually see Stapleton with the other items. Also, contrary to Stapleton's argument, Steele testified that Stapleton offered him the guitar in May or June 2011.

{¶17} Moreover, "[h]aving heard the testimony and having observed the demeanor of the witnesses, the jury could choose to believe all, part, or none of the testimony presented by any of the witnesses." *State v. Delawder*, 4th Dist. No. 10CA3344, 2012-Ohio-1923, ¶ 18. Aside from Stapleton's self-serving testimony, no evidence indicates that anyone other than Stapleton was in Burke's home the day the guitar went missing. And the fact that several of the state's witnesses could not recall the specific day this incident occurred is not dispositive. As the state correctly points out, the exact date the alleged offense occurred is not an element of either of the crimes charged. And the state's witnesses gave fairly consistent accounts on the timeframe in which the incident occurred. Although Burke could not recall the exact date, Deputy VanHoose testified that he spoke to Burke on May 18, 2011, and VanHoose believed the theft happened the day before. Floyd did give conflicting testimony about when she saw Stapleton with the guitar case. First, she said it was a few days before her

statement of May 30, 2011; then she said it was a few weeks prior to that. However, in her written statement, she said it was "[a]bout two weeks ago." This timeframe fits with VanHoose's testimony. The jury could find the written statement more accurate than Floyd's testimony because her memory of events would likely be fresher at the time she gave it than at trial several months later. In addition, Steele testified that his encounter with Stapleton could have occurred in May 2011, which is consistent with the other evidence.

{¶18} Other evidence also supports the jury's conclusion that Stapleton was guilty of the charged offenses. Burke testified that Stapleton saw his black guitar case, inquired about it, and knew it would be unattended in the spare bedroom while Burke napped. Floyd saw Stapleton leave Burke's driveway with a black guitar case and dropped him and the case off at Steele's home. Steele testified that Stapleton tried to sell him the guitar, later sold it one of Steele's dad's friends, and wanted it back after law enforcement began to investigate Burke's claim. The jury was free to believe this testimony despite the fact that Steele had a criminal history and testified as part of plea bargain. Moreover, Stapleton gave different versions of what happened. When Floyd confronted him, he told her someone gave him the guitar. When Detective Spencer spoke to Stapleton, he claimed that Floyd saw him with a weed eater, not a guitar. He accused her of lying because she was mad he had not repaid a $40 loan. Yet at trial, he testified that in March 2011, before he worked for Burke, Floyd did see him with a guitar near Burke's house. The jury was free to discredit Stapleton's testimony about what transpired, particularly in light of his history of theft convictions.

{¶19} The jury chose to believe the state's version of events, and we will not

substitute our judgment for that of the finder of fact under these circumstances.  The evidence reasonably supports the conclusion that Stapleton snuck into Burke's home and took the guitar.  After reviewing the entire record, we cannot say that the jury lost its way or created a manifest miscarriage of justice when it found Stapleton committed burglary and theft from an elderly person or disabled adult.  Accordingly, we overrule Stapleton's sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Kline, J. & McFarland, J.:  Concur in Judgment and Opinion.

For the Court

BY: _____
    William H. Harsha, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**