[Cite as *State v. Graves*, 2012-Ohio-5630.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 12CA13 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| MATTHEW F. GRAVES, | : | |
| | : | **RELEASED 11/26/12** |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

William B. Summers, Parkersburg, West Virginia, for appellant.

Paul G. Bertram, III, Marietta City Law Director, and Daniel Everson, Marietta City Assistant Law Director, Marietta, Ohio, for appellee.
_____

Harsha, J.

{¶1}    Following a bench trial, the trial court convicted Matthew Graves of disorderly conduct while intoxicated under Marietta City Ordinance 509.03(b)(2). Graves contends that his conviction is against the manifest weight of the evidence because the State failed to prove that he engaged in conduct or created a condition that presented a risk of physical harm to himself.  However, the State presented evidence that in his intoxicated state, Graves refused to pay for drinks at a bar and mocked the bartender, prompting Graves' forcible removal from the bar and an injury to his hands. Instead of caring for the cuts on his bloody hands, Graves crossed a street to smoke a cigarette.  He crossed this street by himself even though the alcohol negatively impacted his balance.  Moreover, an officer testified that Graves was too intoxicated to care for himself.  Based on this evidence, the trial court could reasonably conclude that the State proved Graves' guilt beyond a reasonable doubt.  Therefore, we cannot say

that the court clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction.

## I.  Facts

{¶2}    After Graves was charged by citation with a violation of a Marietta City Ordinance for disorderly conduct while intoxicated, he pleaded not guilty and the matter proceeded to a bench trial.

{¶3}    Benjamin Smith, a bartender at the Locker Room, testified that around 1:10 a.m. Graves told Smith to hurry up and give him the drinks he ordered.  Smith told Graves to hold on and that he would come right back.  Smith gave Graves his drinks and told him that he owed nine dollars.  Graves looked at him and laughed.  Smith told Graves he needed the money right now.  Graves said he would pay when he was ready to pay.  Smith told Graves to pay him now or leave.  Graves laughed, and Smith told Graves he was serious.  Graves asked Smith who would make him leave.  Smith told Graves that he would if Graves did not pay.  Graves laughed, put his wallet in his pocket, and turned around.  Smith pushed Graves out of the bar, and Graves fell on the ground.  Graves told Smith, "I'll see you again, 'cause I'm a lawyer, and you messed up * * *."  Then Smith called the Marietta Police Department.  Smith testified that he thought both men used profanity during the encounter and that he thought Graves was "a little drunk."  On cross-examination, Smith acknowledged that Graves never threatened him or anyone else at the bar.

{¶4}    Patrolman B.H. Chapman, a Marietta police officer, testified that he responded to the call from the Locker Room.  When he arrived at the scene, Graves was already talking to another patrolman.  Chapman spoke to Graves, who claimed he

did nothing wrong and wanted to file a lawsuit for assault and battery.  Chapman noticed a strong odor of alcohol coming from Graves.  Chapman testified that Graves' speech was slurred, he had problems pronouncing words, he was unbalanced, and he could not find his I.D.  Graves had blood on his hands.  Chapman testified that Graves was in no condition to be outside on the street because he was too intoxicated to take care of himself.  According to Chapman, Graves was not fit to drive anywhere and had no friends around.  On cross-examination, Chapman admitted that he never asked how Graves planned to get home or checked to see if Graves had car keys.  He also never asked if Graves went to the Locker Room by himself or had friends there.  In addition, Chapman acknowledged that he had no evidence that Graves threatened anyone or tried to damage any property.

{¶5}    Graves admitted that he consumed alcohol before he went to the Locker Room with three friends.  Graves testified that one of the friends drove the group to the bar.  Once there, he ordered a drink for each member of his party.  The bartender told him he had to pay for the drinks "in a rather aggressive and hostile manner."  Graves told the bartender he would pay.  First, he turned to give the drinks to his friends, and the bartender yelled at him.  Graves told the bartender he would get his money when Graves gave it to him.  Graves did not recall putting his wallet away; he intended to pay for the drinks.  He was upset and angry when the bartender threw him out.  Graves landed on the ground and cut his hands.  He got up and walked across a four or six lane street to a parking lot to smoke a cigarette and calm down.  According to Graves, there "wasn't much traffic" given the time of day.  Graves told one of his friends where he was going before he did this.  He planned to go back to the bar later and politely ask to come

back inside. Before he could, he saw an officer and approached him about pressing charges. Graves testified that he planned to ride home with the designated driver unless that person "ended up drinking more than what they should have," in which case the group would call a cab. On cross-examination, Graves acknowledged that after he was taken to the police station, he might have threatened to sue an officer.

{¶6} The trial court found Graves guilty of the charged offense. After sentencing, this appeal followed.

## II. Assignment of Error

{¶7} Graves assigns one error for our review: "The Defendant was wrongly convicted of 'Disorderly Conduct' as the evidence failed to establish that defendant's intoxication posed a risk of harm to himself or others as required in Marietta Municipal Ordinance 509.03."

## III. Manifest Weight of the Evidence.

{¶8} Graves contends that the State failed to prove an essential element of its case against him. We interpret this argument as a manifest weight of the evidence argument.[1] "In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Brown*, 4th Dist. No. 09CA3, 2009-Ohio-5390, ¶ 24, citing *State v. Thompkins*,

---

[1] Even if we interpreted Graves' argument as a challenge to sufficiency of the evidence, his argument would fail because of our conclusion that the weight of the evidence supports his conviction. "When an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that sufficient evidence supports the conviction." *State v. Puckett*, 191 Ohio App.3d 747, 2010-Ohio-6597, 947 N.E.2d 730, ¶ 34 (4th Dist.).

78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A reviewing court "may not reverse a conviction when there is substantial evidence upon which the trial court could reasonably conclude that all elements of the offense have been proven beyond a reasonable doubt." *State v. Johnson*, 58 Ohio St.3d 40, 42, 567 N.E.2d 266 (1991), citing *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988), paragraph two of the syllabus.

{¶9}    We must still remember that the weight to be given evidence and the credibility to be afforded testimony are issues to be determined by the trier of fact. *State v. Frazier*, 73 Ohio St.3d 323, 339, 652 N.E.2d 1000 (1995), citing *State v. Grant*, 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993). The fact finder "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. City of Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Thus, we will only interfere if the fact finder clearly lost its way and created a manifest miscarriage of justice.

{¶10} Graves was convicted of disorderly conduct while intoxicated, in violation of Marietta City Ordinance 509.03(b)(2), which provides: "No person, while voluntarily intoxicated shall * * * [e]ngage in conduct or create a condition that presents a risk of physical harm to the offender or another, or to the property of another." " 'Risk' means a significant possibility, as contrasted with a remote possibility, that a certain result may occur or that certain circumstances may exist." Marietta City Ordinance 501.01(g).

{¶11} Graves does not dispute the fact that he was voluntarily intoxicated. The State implicitly concedes, and we agree, that no evidence suggests Graves presented a

risk of physical harm to another or the property of another.  The issue in this case is whether he engaged in conduct or created a condition that presented a risk of physical harm to himself.

**{¶12}**  Graves complains that Chapman did not observe him do anything that made him a danger to himself.  He argues that he was "just intoxicated -- which is not enough."  (Appellant's Br. 6).

**{¶13}**  The State argues in part that Graves engaged in conduct that presented a risk of physical harm to himself when he "attempted to re-enter The Locker Room after having originally being bounced out for his threatening and disrespectful conduct inside."  (Appellee's Br. 4).  Aside from the lack of evidence that Graves threatened anyone that night, Graves never actually tried to re-enter the bar.  He testified that he planned to make a polite effort to go back inside but then approached an officer instead.  Thus, we reject this argument.

**{¶14}**  Nonetheless, we conclude that substantial evidence supports Graves' conviction.  Smith testified that Graves laughed the first time he asked Graves to pay for the drinks at the bar.  The second time, Graves said he would pay when he was ready.  The third time, the bartender told Graves to pay or leave, and Graves laughed again.  When Smith told Graves he was serious, Graves asked Smith who would make him leave.  Smith told Graves that he would if Graves did not pay, suggesting Smith would use force.  Graves responded by laughing, putting his wallet away, and turning around.  Smith then pushed Graves out of the bar, and Graves cut his hands.

**{¶15}**  From this testimony, the court could conclude that in his intoxicated state, Graves did not merely create a risk of physical harm to himself but actually suffered

physical harm because he refused to pay for drinks and goaded the bartender into using physical force.  And instead of caring for the cuts on his bloody hands, Graves crossed the street to smoke a cigarette.  He crossed this street by himself in spite of the alcohol's negative impact on his balance.  Moreover, Chapman testified that based on his observations, Graves was too intoxicated to take care of himself.  Chapman noticed a strong odor of alcohol coming from Graves, whose speech was slurred.  Chapman indicated Graves had poor balance and had a problem finding his I.D.  Based on this evidence, the trial court could have reasonably concluded that Graves engaged in conduct or created a condition that presented a risk of physical harm to himself while he was alone on the street after 1:10 a.m.

{¶16}  After reviewing the entire record, we cannot say that the trial court lost its way or created a manifest miscarriage of justice when it found Graves guilty of disorderly conduct while intoxicated.  Accordingly, we overrule the sole assignment of error and affirm the trial court's judgment.

                                                                JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Marietta Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Kline, J. & McFarland, J.:  Concur in Judgment and Opinion.


For the Court


BY: _____
       William H. Harsha, Judge




### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**